Gavin J. Rooney, submitted a brief on behalf of amicus curiae the New Jersey Civil Justice Institute (Lowenstein Sandler, attorneys; Gavin J. Rooney and Naomi D. Barrowclough, Roseland, of counsel and on the brief).
Bruce D. Greenberg, Newark, submitted a brief on behalf of amicus curiae Consumers League of New Jersey (Lite DePalma Greenberg, attorneys; Bruce D. Greenberg, of counsel and on the brief, and Susana Cruz Hodge, Newark, on the brief).
Christopher J. Michie and Christopher J. Dalton, Newark, submitted a brief on behalf of amicus curiae Commerce and Industry Association of New Jersey (Clark Michie and Buchanan Ingersoll & Rooney, attorneys; Christopher J. Michie, Bruce W. Clark, Princeton, Christopher J. Dalton, and Jinkal Pujara, Newark, on the brief).
Drew Cleary Jordan, Princeton, submitted a brief on behalf of amicus curiae New Jersey Retail Merchants Association (Morgan, Lewis & Bockius, attorneys; Drew Cleary Jordan and Kristin M. Hadgis, on the brief, and Gregory T. Parks, of the Pennsylvania bar, admitted pro hac vice, on the brief).
Michael P. Daly, and Matthew J. Fedor, Florham Park, submitted a brief on behalf of amicus curiae The Retail Litigation Center, Inc. (Drinker Biddle & Reath, attorneys; Michael P. Daly, Matthew J. Fedor, Meredith C. Slawe, Kathryn E. Deal, Jenna M. Poligo, and Andrew B. Joseph, Florham Park, of counsel and on the brief).
Benjamin D. Morgan, Haddonfield, submitted a brief on behalf of amicus curiae Tailored Brands, Inc. (Archer & Greiner and Armstrong Teasdale, attorneys; Benjamin D. Morgan, on the brief, Charles W. Steese, of the Colorado, Arizona and Iowa bars, admitted pro hac vice, and Douglas N. Marsh, of the Colorado and Illinois bars, admitted pro hac vice, of counsel and on the brief).
JUSTICE PATTERSON delivered the opinion of the Court.
*971 **508 In this appeal, we address two questions of law certified by the United States Court of Appeals for the Third Circuit to this Court. The Third Circuit's certified questions arise from two putative class actions brought under the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. The plaintiffs in both actions premise their TCCWNA claims on defendants' alleged violations of N.J.A.C. 13:45A-5.2 and - 5.3. Those regulations, promulgated by the Attorney General under the authority of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, address the content of contracts of sale or sale orders for the delivery of household furniture.
The certified questions are:
*972 1. Does a violation of the Furniture Delivery Regulations alone constitute a violation of a clearly established right or responsibility of the seller under the TCCWNA and thus provides a basis for relief under the TCCWNA?
**509 2. Is a consumer who receives a contract that does not comply with the Furniture Delivery Regulations, but has not suffered any adverse consequences from the noncompliance, an "aggrieved consumer" under the TCCWNA?
We answer the first certified question in the affirmative and the second certified question in the negative. We hold that the inclusion of language prohibited by N.J.A.C. 13:45A-5.3(c) in contracts of sale or sale orders for the delivery of household furniture may alone give rise to a violation of a "clearly established legal right of a consumer or responsibility of a seller" for purposes of the TCCWNA. N.J.S.A. 56:12-15. We further hold that a consumer who receives a contract that includes language prohibited by N.J.A.C. 13:45A-5.3(c), but who suffers no monetary or other harm as a result of that noncompliance, is not an "aggrieved consumer" entitled to a remedy under the TCCWNA. N.J.S.A. 56:12-17.
I.
A.
In 1995, pursuant to N.J.S.A. 56:8-4, the Division of Consumer Affairs proposed and adopted regulations governing the delivery of household furniture and furnishings, N.J.A.C. 13:45A-5.1 to - 5.4. See 17 N.J.R. 3575 (Sept. 18, 1995). The regulations impose a series of delivery and notice requirements on "[a]ny person who is engaged in the sale of household furniture for which contracts of sale or sale orders are used for merchandise ordered for future delivery." N.J.A.C. 13:45A-5.1(a).
N.J.A.C. 13:45A-5.1(a) requires the seller to either "[d]eliver all of the ordered merchandise by or on the promised delivery date," or "[p]rovide written notice to the consumer of the impossibility of meeting the promised delivery date." That written notice, which must be provided to the consumer prior to the delivery date in the event that the seller does not meet the agreed-upon delivery schedule, "shall offer the consumer the option to cancel said order with a prompt, full refund of any payments already made or to accept delivery at a specified later time." Ibid.
**510 Two of the regulations prescribe specific language that must appear in contract forms or sales documents in "ten-point bold face type" with information specific to the transaction to be added by the seller. N.J.A.C. 13:45A-5.2, - 5.3. First, contract forms or sales documents for furniture sales must include the following statement:
The merchandise you have ordered is promised for delivery to you on or before (insert date or length of time agreed upon).
[ N.J.A.C. 13:45A-5.2(a) (boldface in original).]
Second, such forms or documents "shall conspicuously disclose the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1" and "shall contain, on the first page of the contract form or sales document, the following notice":
If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date.
[ N.J.A.C. 13:45A-5.3(a) (boldface in original).]
*973 Another provision prohibits a seller from including certain language in a furniture contract or sales agreement:
It shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as "all sales final," "no cancellations" or "no refunds," which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable.
[ N.J.A.C. 13:45A-5.3(c).]
Finally, N.J.A.C. 13:45A-5.4 declares that "any violation of the provisions of this subchapter shall be subject to the sanctions" set forth in the CFA.
B.
1.
Plaintiffs David Spade and Katina Spade (Spade plaintiffs) assert that on or about April 25, 2013, they purchased furniture from a retail store owned and operated by defendant Select **511 Comfort Corporation (Select Comfort).[1] They allege that Select Comfort's sales contract included the following language prohibited by N.J.A.C. 13:45A-5.3(c) : a statement that the sale of certain products "are final," and a statement that as to certain categories of products, "[n]o returns will be accepted" or "[n]o returns or exchanges will be authorized or accepted." The Spade plaintiffs also allege that the sales contract that Select Comfort provided to them did not include language mandated by N.J.A.C. 13:45A-5.2(a) and N.J.A.C. 13:45A-5.3(a).
It is undisputed that the furniture ordered by the Spade plaintiffs was timely delivered to them on or about May 29, 2013. As the Third Circuit noted, "[t]he Spade plaintiffs experienced problems with their furniture, but it was initially delivered in a conforming manner."[2]
2.
Plaintiffs Christopher D. Wenger and Eileen Muller (Wenger plaintiffs) allege that on November 28, 2013, they ordered furniture from a store owned by defendant Bob's Discount Furniture, **512 LLC (Bob's Discount Furniture).[3] They allege that the "sales document" provided by Bob's Discount Furniture included the following language:
You may cancel special orders within three (3) days after the order date (11/28/2013) and we will refund your Special Order deposit in full. If you cancel your special order later than three (3) days after the order date (11/28/2013), we will refund your Special *974 Order Deposit less the Special Order fee.
The Wenger plaintiffs assert that this language violates N.J.A.C. 13:45A-5.3(c), because that regulation mandates a full refund in the event of a late delivery of the furniture ordered. The Wenger plaintiffs also contend that the sales document did not entirely conform with N.J.A.C. 13:45A-5.2(a) and N.J.A.C. 13:45A-5.3(a) because language required by those provisions appeared in a font different from the "ten-point bold face type" that the regulations prescribe.[4]
Although the record does not reveal the date on which Bob's Discount Furniture delivered the furniture ordered by the Wenger plaintiffs, it is undisputed that the furniture was timely delivered.
C.
The Spade plaintiffs filed a putative class action in the Law Division, naming Select Comfort and the manufacturer of the furniture that they ordered, Leggett & Platt, as defendants. The Spade plaintiffs asserted a claim under the TCCWNA, based on alleged violations of N.J.A.C. 13:45A-5.2 and - 5.3 on behalf of "all other persons similarly situated to plaintiffs who were issued/received contracts of the same kind and in the same way as **513 plaintiffs."[5] The action was removed to the United States District Court for the District of New Jersey, based on 28 U.S.C. §§ 1332(a) and (d).
The Wenger plaintiffs also filed a putative class action in the Law Division. They asserted TCCWNA claims against Bob's Discount Furniture based on alleged violations of N.J.A.C. 13:45A-5.1, - 5.2, and - 5.3, and sought certification of the following class:
All New Jersey consumers who purchased household furniture or furnishings for future delivery from Defendant at any time on or after the day six years prior to the day this Complaint was filed, using a sales document the same as or similar to the sales document used in the transaction with Plaintiffs that contains the following sentence: "The Merchandise that you have ordered is promised for delivery to you on or before _____" and where the delivery date in the blank space at the end of the sentence was not filled in.
Bob's Discount Furniture removed the action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332(a) and (d). The district court denied the Wenger plaintiffs' motion to remand.
In Spade, Select Comfort filed a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). In Wenger, Bob's Discount Furniture filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).
After consolidating the cases, the district court granted both motions in accordance with the standard of Fed. R. Civ. P. 12(b)(6). Citing the plain language of N.J.S.A. 56:12-17, the district court held *975 that in order to be an "aggrieved consumer" entitled to relief under the TCCWNA, a plaintiff would be required to demonstrate that he or she "suffer[ed] the effects of a violation" of the regulation at issue. It concluded that because **514 N.J.A.C. 13:45A-5.2 and - 5.3 exist to "foster timely delivery of conforming furniture"-an objective achieved by the defendant sellers in both cases-none of the plaintiffs constituted an "aggrieved consumer" for purposes of the TCCWNA. The district court accordingly dismissed both complaints.
The Spade plaintiffs and the Wenger plaintiffs appealed the district court's judgment. After briefing, the Third Circuit panel determined that the appeals raised important and unresolved questions of New Jersey law. Pursuant to Rule 2:12A-3, the Third Circuit certified the questions to this Court.
We accepted the questions as posed by the Third Circuit.[6] We also granted the applications of the New Jersey Association for Justice, the Consumers League of New Jersey, the Retail Litigation Center, Inc., the New Jersey Retail Merchants Association, the New Jersey Business and Industry Association, the New Jersey Civil Justice Institute, the Commerce and Industry Association of New Jersey, and Tailored Brands, Inc., to appear as amici curiae.
II.
A.
To answer the Third Circuit's certified questions, we apply familiar principles of statutory construction. The Legislature instructs that in its statutes, "words and phrases shall be read and construed with their context," and that such words and phrases "shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, **515 be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1.
Accordingly, "[t]he starting point of all statutory interpretation must be the language used in the enactment." DCPP v. Y.N., 220 N.J. 165, 178, 104 A.3d 244 (2014) ; accord Acoli v. State Parole Bd., 224 N.J. 213, 227, 130 A.3d 1228 (2016). We construe the words of a statute "in context with related provisions so as to give sense to the legislation as a whole." N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 570, 163 A.3d 887 (2017) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ).
"If the plain language leads to a clear and unambiguous result, then our interpretative process is over." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386, 143 A.3d 254 (2016) (quoting Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 195, 927 A.2d 543 (2007) ). We rely on extrinsic evidence of legislative intent "only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429, 70 A.3d 544 (2013).
B.
The TCCWNA is intended "to prevent deceptive practices in consumer contracts." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 67, 171 A.3d 620 (2017) (quoting *976 Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457, 25 A.3d 1027 (2011) ). When it enacted the TCCWNA in 1981, the Legislature acknowledged the presence of legally invalid provisions in "[f]ar too many consumer contracts, warranties, notices and signs," which acted to "deceive[ ] a consumer into thinking [the provisions] are enforceable," and deterred consumers from enforcing their legal rights. Sponsor's Statement to A. 1660 2 (1980). In the TCCWNA, the Legislature sought not to confer new legal rights, but to require sellers "to acknowledge clearly established consumer rights," and **516 to "provide[ ] remedies for posting or inserting provisions contrary to law." Shelton, 214 N.J. at 432, 70 A.3d 544 ; see also Governor's Statement on Signing A. 1660 (Jan. 11, 1982) (noting that TCCWNA would "strengthen[ ] provisions of the Consumer Fraud Act").
To that end, the TCCWNA provides that
[n]o seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.
[ N.J.S.A. 56:12-15.]
The TCCWNA authorizes the award of a civil penalty, damages, attorneys' fees, and costs to an "aggrieved consumer":
Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorneys' fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition a court to terminate a contract which violates the provisions of [ N.J.S.A. 56:12-15 ] and the court in its discretion may void the contract.
[ N.J.S.A. 56:12-17.]
A plaintiff pursuing a TCCWNA cause of action must prove four elements: first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer." N.J.S.A. 56:12-15, -17.
**517 C.
1.
Against that backdrop, we consider the Third Circuit's first certified question: whether a violation of N.J.A.C. 13:45A-5.2 or - 5.3 alone constitutes a violation of a clearly established legal right of a consumer or a responsibility of a seller under the TCCWNA, and therefore provides a basis for relief under the TCCWNA.
*977 The Spade plaintiffs, the Wenger plaintiffs, and amici curiae the New Jersey Association for Justice and the Consumers League of New Jersey, argue that any violation of N.J.A.C. 13:45A-5.2 or - 5.3 violates a "clearly established legal right of a consumer or responsibility of a seller" under N.J.S.A. 56:12-15. Defendants contend that, in general, administrative regulations cannot give rise to a "clearly established" legal right or responsibility for purposes of the TCCWNA. Amicus curiae the Retail Litigation Center, Inc., argues that a consumer asserting that a seller violated N.J.A.C. 13:45A-5.2 or - 5.3 must also show ascertainable loss under the CFA to demonstrate a violation of a "clearly established" legal right or responsibility. Amicus curiae the New Jersey Civil Justice Institute urges the Court not to deem an omission of required language, or the appearance of such language in an incorrect font, to give rise to a cause of action under N.J.S.A. 56:12-15. Amici curiae the Commerce and Industry Association of New Jersey and Tailored Brands, Inc., assert that only the contravention of well-recognized requirements should constitute a violation of a "clearly established" legal right or responsibility under N.J.S.A. 56:12-15. The remaining amici curiae take no position on this issue.
In these appeals, all plaintiffs allege that defendants included in their sales documents language constituting an affirmative misrepresentation, contrary to N.J.A.C. 13:45A-5.3(c), a regulation that prohibits potentially misleading language concerning the availability of a refund. Because those allegations are present in both appeals, we need not reach the question of whether a seller's **518 omission of a provision required by N.J.A.C. 13:45A-5.2 or - 5.3 would give rise to a TCCWNA claim. We address only those allegations of an affirmative violation of N.J.A.C. 13:45A-5.3(c).
Nothing in either the TCCWNA's plain language or its legislative history suggests that the inclusion of language in a contract or other writing that violates a regulation cannot be the basis for a claim under N.J.S.A. 56:12-15. In the TCCWNA, the Legislature did not limit the term "State or Federal law" to statutes, as it could have done with a minor revision of the TCCWNA's text.
Moreover, accepting regulations as a source of law in the application of N.J.S.A. 56:12-15's "clearly established" standard furthers the TCCWNA's consumer-protection objectives. The Legislature not only included affirmative acts and knowing omissions in the category of consumer fraud violations, but also "impose[d] strict liability" for regulatory violations, regardless of the defendant's intent. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18, 647 A.2d 454 (1994). It did so because "parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the [CFA]." Id. at 18-19, 647 A.2d 454. Although the CFA generally describes unlawful commercial practices that give rise to a cause of action, N.J.S.A. 56:8-2, the Legislature envisioned that the Attorney General would specifically identify unlawful practices in particular commercial markets, and that such regulations would constitute law. See N.J.S.A. 56:8-4 ("To accomplish the objectives and to carry out the duties prescribed by [the CFA], the Attorney General ... may ... promulgate such rules and regulations ... as may be necessary, which shall have the force of law.").
Accordingly, the content of contracts and other writings used in commercial transactions is typically addressed in regulations, rather than statutes. See, e.g., N.J.A.C. 13:45A-16.2(a)(12)(ii) (requiring *978 all home improvement contracts for purchase price in excess of $500.00 to include "[a] description of the principal work to be done and the products and materials to be used or installed in performance **519 of the contract"); N.J.A.C. 13:45A-26B.2(a)(2) (requiring motor vehicle sellers to itemize charges for pre-delivery services "in at least 10-point type, on the sales document").
Our decisions also acknowledge that a TCCWNA violation may be premised on the violation of a regulation. In Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278-79, 933 A.2d 942 (App. Div. 2007), aff'd on other grounds, 197 N.J. 543, 964 A.2d 741 (2009), the Appellate Division recognized a TCCWNA claim based on alleged violations of automotive sales practices regulations promulgated pursuant to the CFA. We noted in Dugan that courts applying N.J.S.A. 56:12-15"assess whether the CFA or another consumer protection statute or regulation clearly prohibited the contractual provision or other practice that is the basis for the TCCWNA claim." 231 N.J. at 69, 171 A.3d 620 ; see also Kent Motor Cars, 207 N.J. at 457-58, 25 A.3d 1027 (affirming dismissal of defendant's claims against insurer in TCCWNA action based on violation of automotive sales regulations governing font size in sales contract). There is, in short, no support in the TCCWNA or in case law for the proposition that regulations cannot serve as the source of a consumer's "clearly established legal right" or a "responsibility of a seller" under N.J.S.A. 56:12-15.
N.J.A.C. 13:45A-5.3(c) is plainly the source of a "clearly established legal right of a consumer or responsibility of a seller" within the meaning of N.J.S.A. 56:12-15. The regulation carries the force of law; indeed, a violation "shall be subject to the sanctions contained in" the CFA. N.J.A.C. 13:45A-5.4. Moreover, N.J.A.C. 13:45A-5.3(c)'s prohibition on misleading refund terms in furniture-sales contracts provides unambiguous direction to furniture sellers. The regulation generally bars terms in furniture sales contracts or sales agreements "which violate or are contrary to the rights and responsibilities" set forth in the regulations, and provides specific examples of prohibited language: " 'all sales final,' 'no cancellations' or 'no refunds.' " N.J.A.C. 13:45A-5.3(c). The regulation is simple and clear.
**520 Accordingly, we conclude that a furniture seller's inclusion in a consumer sales contract or agreement of language prohibited by N.J.A.C. 13:45A-5.3(c) may alone constitute a violation of a "clearly established legal right of a consumer or responsibility of a seller" under N.J.S.A. 56:12-15, and thus may provide a basis for relief under the TCCWNA.
2.
The Third Circuit's second certified question requires that we determine whether a consumer who receives a contract containing provisions that violate one of the regulations at issue, but who has suffered no adverse consequences as a result of the contract's noncompliance with the regulation, constitutes an "aggrieved consumer," as that term is used in N.J.S.A. 56:12-17.
"The TCCWNA does not specifically define what makes a 'consumer' an 'aggrieved consumer' for purposes of N.J.S.A. 56:12-17." Dugan, 231 N.J. at 69, 171 A.3d 620. In several decisions, we have evaluated TCCWNA claims without squarely addressing the question posed by the Third Circuit in this case. See id. at 71-72, 171 A.3d 620 (reversing certification of TCCWNA class because "a claimant who does not, at a minimum, prove that he or she received a menu cannot satisfy the elements of the TCCWNA and is not an 'aggrieved consumer' ");
*979 Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 125-26, 85 A.3d 947 (2014) (affirming dismissal of TCCWNA claim predicated on alleged violation of prohibition on Medicaid or Medicare-certified nursing homes requiring third-party guarantees of payment as condition of resident admission or retention); Shelton, 214 N.J. at 435, 70 A.3d 544 ("[T]he phrase 'primarily for personal, family or household purposes' in N.J.S.A. 56:12-15 cannot be interpreted to exclude intangible property from the scope of the TCCWNA."). The Third Circuit's request that we define an "aggrieved consumer" thus raises a question of first impression for this Court.
The Spade plaintiffs, the Wenger plaintiffs, amicus curiae the New Jersey Association for Justice, and amicus curiae the Consumers **521 League of New Jersey urge an expansive definition of "aggrieved consumer." They argue that any consumer who is offered or enters into a contract or other writing that violates N.J.A.C. 13:45A-5.2 or - 5.3, either by inclusion of an offending provision or omission of a required provision, is an "aggrieved consumer" under N.J.S.A. 56:12-17, whether or not he or she has consequently suffered harm. Defendants in both appeals and amici curiae the Retail Litigation Center, Inc., the New Jersey Retail Merchants Association, the New Jersey Business and Industry Association, the New Jersey Civil Justice Institute, the Commerce and Industry Association of New Jersey, and Tailored Brands, Inc., maintain that in order to be an "aggrieved consumer," a plaintiff must demonstrate an adverse consequence caused by an unlawful provision in a contract or other writing.
We find ample evidence of the Legislature's intent in the TCCWNA's plain language to resolve this question of statutory interpretation. In the provision of the TCCWNA that defines a statutory violation, the word "consumer"-unmodified by the term "aggrieved"-broadly denotes "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." N.J.S.A. 56:12-15. The Legislature prohibited any "seller, lessor, creditor, lender or bailee" from including an unlawful provision in any "written consumer contract" offered to "any consumer or prospective consumer," or entered into with such a "consumer or prospective consumer," or in "any written consumer warranty, notice or sign." Ibid. Thus, when it defined the conduct barred by the TCCWNA, the Legislature chose expansive language to describe the consumers and potential consumers whom the statute was enacted to protect.
In the TCCWNA's remedial provision, however, the Legislature chose a more precise term: "aggrieved consumer." N.J.S.A. 56:12-17. The Legislature clearly intended to differentiate between "consumers and prospective consumers"-the broad category of people whom the Legislature seeks to shield from offending **522 provisions-and "aggrieved consumers" entitled to a remedy under the TCCWNA.
"[L]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." Carter v. Doe (In re N.J. Fireman's Ass'n Obligation), 230 N.J. 258, 274, 166 A.3d 1125 (2017) (alteration in original) (quoting State v. Regis, 208 N.J. 439, 449, 32 A.3d 1109 (2011) ). If "aggrieved consumer" were construed to mean nothing more than a "consumer" to whom a contract or other writing is offered, given or displayed, the term "aggrieved" would indeed be superfluous. We interpret that word so as to give it significance; it distinguishes consumers who have suffered harm because of a violation of N.J.S.A. 56:12-15 from those who have merely been exposed to unlawful *980 language in a contract or writing, to no effect.
As reference sources contemporaneous to the TCCWNA's enactment reflect,[7] the term "aggrieved consumer" denotes a consumer who has suffered some form of harm as a result of the defendant's conduct. See Black's Law Dictionary 60 (5th ed. 1979) (defining "aggrieved party" as "[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly affected by a degree or judgment," and "aggrieved" to denote "[h]aving suffered loss or injury; damnified; injured"); Oxford English Dictionary 255 (2d ed. 1989) (observing that "aggrieve" was "rarely used" except "1. [i]n the passive to be **523 aggrieved: to be injuriously affected, to have a grievance or cause of grief[;] 2. [t]o afflict oneself, to grieve, to feel grief, 3. [t]o make more grave or serious; to aggravate, exaggerate"); Webster's Third New International Dictionary 41 (3d ed. 1981) (defining "aggrieved" to mean "1. troubled or distressed in spirit[;] 2. showing grief, injury, offense, having a grievance, specifically suffering from an infringement or denial of legal rights"). Thus, an "aggrieved consumer" is a consumer who has been harmed by a violation of N.J.S.A. 56:12-15.
We do not, however, view that harm to be limited to injury compensable by monetary damages. The Legislature clearly envisioned that an "aggrieved consumer" is not necessarily a consumer entitled to an award of damages; it provided for "a civil penalty of not less than $100.00 or ... actual damages, or both at the election of the consumer." N.J.S.A. 56:12-17. The TCCWNA thus contemplates that a consumer may be entitled to a remedy notwithstanding the absence of proof of monetary damages. Ibid.; see also Bohus v. Restaurant.com, Inc., 784 F.3d 918, 930 (3d Cir. 2015) ("We cannot disregard the legislature's choice to award statutory damages in the absence of actual damages."); Shelton, 214 N.J. at 432, 70 A.3d 544 (describing Assembly Commerce, Industry and Professions Committee's decision to change language providing for statutory remedy "from civil 'damages' of not less than $100 to a civil 'penalty' of not less than $100").
Thus, a consumer may be "aggrieved" for purposes of N.J.S.A. 56:12-17 if he or she has suffered harm as a result of the defendant's inclusion of prohibited language in a contract or other writing even if that harm is not a basis for a damages award. If, for example, a furniture seller fails to timely deliver a consumer's furniture, and the consumer would have sought a refund had he or she not been deterred by the "no refunds" language prohibited by N.J.A.C. 13:45A-5.3, that consumer may be an "aggrieved consumer" entitled to a civil penalty under N.J.S.A. 56:12-17. If an untimely delivery and misleading "no refunds" language leave a consumer without furniture needed for a family gathering, the **524 consumer may be an "aggrieved consumer" for purposes *981 of N.J.S.A. 56:12-17. Proof of harm resulting from contract language prohibited by N.J.S.A. 56:12-15 may warrant a civil penalty under N.J.S.A. 56:12-17, even if the harm is not compensable by damages.
In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an "aggrieved consumer" for purposes of the TCCWNA. In the setting of these appeals, if a consumer has entered into a sales contract containing a provision that violated N.J.A.C. 13:45A-5.3, but his or her furniture was delivered conforming and on schedule, and he or she has incurred no monetary damages or adverse consequences, that consumer has suffered no harm. Such a consumer is not an "aggrieved consumer" under N.J.S.A. 56:12-17.
III.
In sum, we construe the TCCWNA to recognize an affirmative violation of N.J.A.C. 13:45A-5.3(c), by virtue of the inclusion of language prohibited by that regulation in a contract of sale or sale order for the delivery of household furniture, to constitute a violation of a "clearly established legal right of a consumer or responsibility of a seller." N.J.S.A. 56:12-15. We interpret N.J.S.A. 56:12-17 to require a consumer to show that he or she has suffered harm, even if that harm does not warrant an award of damages, as a result of a violation of N.J.S.A. 56:12-15, in order for that consumer to constitute an "aggrieved consumer" for purposes of the TCCWNA. N.J.S.A. 56:12-17.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

We derive our summary of the Spade plaintiffs' allegations from the complaint and its exhibits in the record.

The Spade plaintiffs allege that on two unspecified dates following delivery, they found defects in the furniture sold by Select Comfort. They assert that after unsuccessful attempts to repair the defects, they retained counsel to revoke their acceptance of the delivery pursuant to N.J.S.A. 12A:2-608, and that Select Comfort has not resolved the parties' dispute over the alleged defects. Select Comfort represents that the Spade plaintiffs did not contact it to complain about the furniture until several months after the furniture was delivered and accepted. It asserts that two components of the furniture were replaced in accordance with the applicable warranty, and that plaintiffs' warranty claim was resolved. In light of the Third Circuit's statement that the Spade plaintiffs' furniture was timely delivered in a conforming condition, the parties' dispute is irrelevant to our consideration of the certified questions. See Delta Funding Corp. v. Harris, 189 N.J. 28, 35, 912 A.2d 104 (2006) ("The purpose of the certification process is to answer the question of law submitted pursuant to Rule 2:12A, not to resolve [the parties'] factual differences.").

We derive our summary of the Wenger plaintiffs' allegations from the complaint and its exhibits in the record.

The Wenger plaintiffs also allege that a "brochure/folder" provided by Bob's Discount Furniture violated N.J.A.C. 13:45A-5.2(a) and N.J.A.C. 13:45A-5.3(a), because it advised the consumer that when the store's delivery team "is ready to leave your home, we will ask you to confirm that your delivery was totally satisfactory, or, if there was a problem, to immediately speak with a Customer Care representative."

The district court dismissed the Spade plaintiffs' claims against Select Comfort based on the CFA and the Magnuson Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 to 2312. It also dismissed the Spade plaintiffs' claims against Leggett & Platt. None of those claims are relevant to the Third Circuit's certified questions.

The Third Circuit designated its question regarding the definition of an "aggrieved consumer" under N.J.S.A. 56:12-17 as its first question, and its question concerning a "clearly established legal right of a consumer or responsibility of a seller" under N.J.S.A. 56:12-15 as its second question. Because N.J.S.A. 56:12-15 defines a TCCWNA violation and N.J.S.A. 56:12-17 prescribes the remedy for such a violation, we answer the questions in reverse order.

In construing legislative language, we may consider the usage of that language at the time of a statute's enactment. See, e.g., Sandifer v. U.S. Steel Corp., 571 U.S. 220, 134 S.Ct. 870, 877-79, 187 L.Ed.2d 729 (2014) (relying on dictionary definitions in use at time of statute's enactment to define "clothes" and "changing" in order to determine whether "the donning and doffing of protective gear" qualifies as "changing clothes" within the meaning of Fair Labor Standards Act); Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term 'bribery' [in the Travel Act, 18 U.S.C. § 1952,] at the time Congress enacted the statute in 1961." (citation omitted) ).