NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2358-15T3

CHARLES WRIGHT,

      Plaintiff-Appellant,

v.

BANK OF AMERICA, N.A., and
BAC HOME LOANS SERVICING,
LP,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **October 4, 2018** |
| **APPELLATE DIVISION** |

Argued September 13, 2018 – Decided October 4, 2018

Before Judges Fisher, Hoffman and Firko.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0433-15.

Lewis G. Adler argued the cause for appellant (Lewis G. Adler and Law Office of Paul DePetris, attorneys; Lewis G. Adler and Paul DePetris, of counsel and on the brief).

Connie Flores Jones (Winston & Strawn, LLP) of the Texas bar, admitted pro hac vice, argued the cause for respondents (Winston & Strawn LLP, attorneys; Stephen J. Steinlight, and Melissa Steedle Bogad, on the briefs).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Plaintiff Charles Wright filed a complaint that alleged five notices of intention to foreclose served on him in 2010 by defendant BAC Home Loans Servicing, LP (BAC) violated the Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 to -68. He asserted that BAC – the alleged servicer of loans made in 2007 when plaintiff purchased his Williamstown residence – neglected to include the name and address of the lender, defendant Bank of America, N.A. (the bank).[1] Although no foreclosure action followed on the heels of these notices, plaintiff claims these FFA violations – not actionable on their own – may form the basis of a claim under the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18. Consequently, he argues that the trial judge erred in dismissing the complaint by applying the litigation privilege and by holding that the alleged FFA violation cannot support a TCCWNA claim. We reject the application of the litigation privilege but because the legal grounds upon which the latter determination was based have shifted since the trial judge's decision and the perfection of this appeal, see

---

[1] We assume without deciding – because it was not raised in the trial court – that the bank, and not BAC, is the lender, although the bank and BAC asserted at oral argument in this court the possibility that BAC actually was the lender at the time the notices were sent to plaintiff.

Spade v. Select Comfort Corp., 232 N.J. 504 (2018), we vacate the order of dismissal and remand to allow plaintiff an opportunity to file an amended pleading that expresses the true nature of his damage claim.

In explaining our ruling, we start by recognizing that a lender or its agent must accurately recite in any notice of intention to foreclose those things the FFA specifically requires. Our Supreme Court has held – albeit after the alleged faulty notices were served on plaintiff – that the FFA's command that the lender's identity and address must be provided, N.J.S.A. 2A:50-56(c)(11), is not satisfied when only the name and address of the lender's servicing agent is provided. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 474-75 (2012). As mentioned, plaintiff claims BAC violated the FFA when, in 2010, it served notices that appeared to lack the lender's information. See n.1, above.

Even though there is no suggestion that the content of the notices was false or misleading – only that a legal requirement was omitted – we assume this type of FFA violation may support a TCCWNA claim because, in enacting TCCWNA, the Legislature "chose expansive language to describe the consumers and potential consumers whom the statute was enacted to protect."

A-2358-15T3

<u>Spade</u>, 232 N.J. at 521.[2] TCCWNA may be triggered by a departure from any "clearly established legal right" or "responsibility." N.J.S.A. 56:12-15. Such a departure occurs when a consumer protection statute or regulation prohibited "the contractual provision <u>or other practice</u>" that is the basis of the claim. <u>Dugan v. TGI Fridays, Inc.</u>, 231 N.J. 24, 69 (2017) (emphasis added). We agree that the required analysis not only encompasses the content of or omission of provisions from a loan agreement – the breach of which generated a lender's right to foreclose – but also FFA violations revealed by a lender's pre-suit notice of intention to foreclose. The statutorily-required notice of intention to foreclose is part of the foreclosure "practice" and, thus, a critical element that would fall within TCCWNA's scope.

That conclusion does not end our analysis. Although viewing expansively what it means to be a "consumer" when the Legislature declared what a lender may not do when engaging a "consumer" or "prospective consumer" in N.J.S.A. 56:12-15,[3] the <u>Spade</u> Court viewed less expansively what was meant by an

---

[2] We are mindful that the <u>Spade</u> Court did not determine whether an "omission" of a contractual provision required by law would give rise to a TCCWNA claim. 232 N.J. at 517-18.

[3] This statute prohibits a "lender" from offering "to any <u>consumer</u> or prospective <u>consumer</u>" or from entering into "any written <u>consumer</u> contract" or from giving or displaying "any written <u>consumer</u> warranty, notice or sign" that includes "any

"aggrieved consumer" when the Legislature fixed the scope of "civil liability" in N.J.S.A. 56:12-17 (emphasis added) for such a violation.[4] The Spade Court explained that, in enacting N.J.S.A. 56:12-17, the Legislature "chose a more precise term: 'aggrieved consumer,'" and "clearly intended to differentiate between 'consumers and prospective consumers' – the broad category of people whom the Legislature seeks to shield from offending provisions – and 'aggrieved consumers' entitled to a remedy under the TCCWNA." 232 N.J. at 521-22. In ascertaining the meaning of these provisions, the Court held that "an 'aggrieved consumer' is a consumer who has been harmed by a violation of N.J.S.A. 56:12-15." Id. at 523. The Court – reasoning from TCCWNA's declaration that an aggrieved consumer may seek actual damages or the statutory penalty –

provision that violates any clearly established legal right of a consumer or responsibility of a . . . lender . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed"; those declarations are followed by a sentence that defines a "consumer" as including one who "borrows . . . any money . . . which is primarily for personal, family or household purposes." N.J.S.A. 56:12-15 (emphasis added).

[4]  In N.J.S.A. 56:12-17 (emphasis added), the Legislature declared that "[a]ny person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." The remainder of this statute refers only to "consumers" but it cannot logically be argued that the remedies provided throughout N.J.S.A. 56:12-17 are available to un-aggrieved consumers.

A-2358-15T3

concluded that the required harm is not "limited to injury compensable by monetary damages." Ibid.

In describing a harm that doesn't give rise to compensable damages, the Court provided the example of a furniture seller whose contract unlawfully included a "no refunds" provision. The Court held that if the consumer would have sought a refund but was deterred by the prohibited no-refund language, "that consumer may be an 'aggrieved consumer' entitled to a civil penalty under N.J.S.A. 56:12-17." Ibid. The same consumer would be aggrieved if the untimely delivery and the forbidden language left the consumer "without furniture needed for a family gathering." Id. at 523-24. But that consumer, facing the same unlawful no-refund provision, would not be an "aggrieved consumer" if conforming furniture was delivered on schedule and without any "adverse consequences." Id. at 524.

In considering whether plaintiff might be an "aggrieved consumer" and where he might fit in this spectrum of choices described in Spade's example, we observe that plaintiff acknowledges no foreclosure action was commenced after he was served with the pre-suit notices in question, so the damage alleged as a result of the FFA violations is not readily apparent or assumable even from an expansive view of the complaint's contents. See Seidenberg v. Summit Bank,

6

348 N.J. Super. 243, 250 (App. Div. 2002) (recognizing motions to dismiss for failure to state a claim require "that the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement"). The complaint expressly demands only an award of the statutory $100 penalty for each alleged TCCWNA violation, so it may be that plaintiff recognizes his inability to show an injury compensable by monetary damages. But, because the case was dismissed for failure to state a claim upon which relief may be granted, the factual record is more than a little barren as to how the alleged injury may have impacted plaintiff. It may be that under Spade's interpretation of TCCWNA, plaintiff may not even be an aggrieved consumer entitled to a statutory penalty. Because the matter was dismissed before the parties and the trial court had the benefit of Spade, the best course calls for a remand to allow plaintiff to file an amended complaint that would identify the alleged harm he believes was caused by the pre-suit notices. See Greenbriar Oceanaire Cmty. Ass'n v. U.S. Home Corp., 452 N.J. Super. 340, 345-46 (App. Div. 2017).

A-2358-15T3

We lastly consider, and readily reject, the trial judge's alternative basis for dismissing the complaint: the litigation privilege.[5] The judge cited and quoted well-established principles that govern the privilege's application but misapprehended the fact that the privilege is intended to apply to "statements" that would otherwise be defamatory. See, e.g., Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 563 (1990) (recognizing that "[a]lthough defamatory, a statement will not be actionable if . . . made in the course of judicial, administrative, or legislative proceedings"). No defamatory or injurious statement was made here; BAC merely omitted information required by the FFA. That omission could not be the cause of a defamation action or other similar tort;[6] consequently the rationale for applying the litigation privilege is absent. Chief Justice Hughes, when a member of this court, elegantly explained

---

[5] The judge cited and substantially relied on an unpublished Law Division decision contrary to Rule 1:36-3 (declaring that, with few exceptions, "no unpublished opinion shall be cited by any court"), a rule which seems lately "more honored in the breach than the observance."

[6] We acknowledge, the litigation privilege is not limited to insulating utterances from subsequent defamation actions. The Supreme Court long ago recognized the privilege may reach claims asserting other similar tortious conduct. See Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563-64 (1955). In expanding the privilege's scope to a claim for the malicious interference with one's business, the Court explained that the application of the privilege should not result from the way a claim is labeled but by the reason for the privilege's existence. Id. at 564.

that the attachment of the litigation privilege "is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice." Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957). See also Hawkins v. Harris, 141 N.J. 207, 214 (1995). Without that need for protection and without the benefit derived from protecting a speaker from suit, the litigation privilege should have no application. Because BAC made no defamatory or arguably defamatory statement, BAC's alleged failure to identify the lender's name and address is not worthy of the litigation privilege's protection.[7] If applied here, we would be providing lenders and their representatives with immunity from all TCCWNA suits, thereby eviscerating TCCWNA's application in this area and without vindication of the privilege's true intent: to free speakers and writers in a judicial setting from the fear of an ensuing action based on their utterances, not from their omissions.

---

[7] Our holding should not be misconstrued as suggesting that an alleged defamatory statement in a pre-suit notice, such as a notice of intention to foreclose or a tort claims notice, might not be encompassed by the litigation privilege. To the contrary, such required notices fall within the requirement that the insulated statement be made in judicial or quasi-judicial proceedings. Hawkins, 141 N.J. at 216-17. That does not mean, however, that the sender of all such notices, when the notice departs from applicable legal requirements, will also be insulated from a claim in response to that breach.

A-2358-15T3

The order of dismissal is vacated and the matter remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2358-15T3