**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2780

_____

JEFRREY GUNDELL, on behalf of himself and others similarly situated,
Appellant

v.

SLEEPY'S, LLC; MATTRESS FIRM, INC., as successor in interest to Sleepy's, LLC;
MATTRESS FIRM, INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-15-cv-07365)
District Judge: Honorable Robert Kirsch

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 28, 2024

_____

Before: CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER and CHUNG, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: November 7, 2024)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Jeffrey Gundell bought a mattress "base" from Sleepy's, LLC, that he believed to be compatible with a mattress he already owned. After discovering that the mattress base he purchased was not compatible with his mattress, Gundell filed this putative class action lawsuit against Sleepy's, alleging that the sale of the mattress base violated several New Jersey consumer protection laws. The District Court denied class certification and granted summary judgment in favor of Sleepy's. Gundell appealed. For the reasons that follow, we will affirm the District Court's grant of summary judgment.

I.

We write for the benefit of the parties and so recite only the facts pertinent to our decision. Gundell bought a mattress, frame, and box spring from Sleepy's in 2013. Two years later he sought to purchase an adjustable mattress base compatible with his existing mattress. Using the Sleepy's website, Gundell identified a mattress base that was advertised as compatible with his mattress. Gundell also visited Sears, a retail store, where staff assured him that the base he identified online was compatible with his mattress. Gundell then visited a Sleepy's store, where a store employee also assured him that the mattress base was compatible with his mattress. Gundell purchased the mattress base. Sleepy's timely delivered the mattress base identified in the contract of sale. After the mattress base was installed, however, Gundell discovered that it did not fit his mattress as he expected. A Sleepy's employee later informed Gundell that the mattress base was not, in fact, compatible with his mattress. Sleepy's offered Gundell a partial

2

refund, but Gundell declined the offer because he wanted to return the mattress base and receive a full refund.

The sales contract for the mattress base contained a "Limitation of Liability" clause that provided, in part: "Sleepy's hereby disclaims, and buyer hereby waives[,] any and all obligations and liabilities of Sleepy's and all rights, claims and remedies of buyer against Sleepy's, including, but not limited to, all liability with respect to the product . . . ." Appendix ("App.") 97 (hereinafter, the "Limitation of Liability" clause). The contract also included a clause titled "Deposits and Refunds," which provided, in part: "No refund will be offered after delivery, with the exception of partial adjustments in accordance with Sleepy's Price Guarantee Policy." Id. (hereinafter, the "No Refund" clause).

Gundell filed a lawsuit against Sleepy's in the Superior Court of New Jersey, Middlesex County. Sleepy's removed the suit to the United States District Court for the District of New Jersey, which assumed jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

A three-count Third Amended Complaint is the operative pleading. In Count I of the Third Amended Complaint, Gundell alleges that the Limitation of Liability and No Refund provisions in the sales contract are unlawful waivers of rights protected by the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J. Stat. Ann. § 56:12-14 et seq. ("TCCWNA"). Gundell requests damages and declaratory and injunctive relief with respect to Count I. In Count II, Gundell seeks a declaratory judgment that the Limitation of Liability and No Refund provisions are void under the TCCWNA and void as contrary

3

to public policy. And in Count III, Gundell alleges that Sleepy's violated the New Jersey Furniture Delivery Regulations, N.J. Admin. Code § 13:45A-5.1 et seq. ("FDR") and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq. ("CFA"), by failing to deliver a "conforming" mattress base and refusing to notify him of the remedies the FDR requires. Gundell seeks to certify a class consisting of New Jersey residents who purchased household furniture from Sleepy's and "received the same or similar sales documents as those received by Plaintiff in February 2013 and May 2015." App. 72.

The District Court granted summary judgment in favor of Sleepy's with respect to Counts I and III and denied class certification with respect to Count II. It later entered summary judgment in favor of Sleepy's with respect to Count II and dismissed the suit. Gundell timely appealed.[1]

## II.

We apply de novo review to a grant of summary judgment, applying the same standard as the District Court. Huber v. Simon's Agency, Inc., 84 F.4th 132, 144 (3d Cir. 2023). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could resolve the dispute in favor of the nonmoving party. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022). When assessing the genuineness of a dispute, we consider the evidence in the light most favorable to the nonmovant and draw all

---

[1] The District Court had jurisdiction of the suit pursuant to the CAFA, 28 U.S.C. § 1332(d). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

4

reasonable inferences in her favor.  <u>Morgan v. Allison Crane & Rigging LLC</u>, 114 F.4th 214, 220 (3d Cir. 2024).

III.

The District Court granted summary judgment with respect to Count III on the basis that the mattress base was not a "non-conforming" good under the FDR.  Gundell argues that the court's conclusion was error because a mattress base "that does not fit the intended mattress" is non-conforming.  We see no basis for Gundell's argument in the regulatory text.[2]  The FDR provide, in relevant part:

> For the purposes of this section, delivery of furniture or furnishings that are damaged or that are not the exact size, style, color or condition indicated on the sales contract, shall not constitute delivery as required by (a)1 above. . . . Upon receipt *of such non-conforming merchandise*, the consumer shall have the option of either accepting the furniture or of exercising any of the options set forth in (a)2 above.

N.J. Admin. Code § 13:45A-5.1(e)1 (emphasis added).

This provision makes clear that "non-conforming merchandise," as that term is used in the FDR, is merchandise that is "damaged" or "not the exact size, style, color or condition indicated on the sales contract."  <u>Id.</u>  It is undisputed that the mattress base Gundell received was exactly as specified in the contract.  And the record provides no basis for the conclusion that the mattress base was "damaged."  To be sure, the record contains testimony from Gundell that the mattress base did not serve the purpose he intended for it.  But Gundell's disappointed expectation was not the result of "damage" to

---

[2] The parties agree that New Jersey law applies, as do we.

5

the mattress base; it was the result of how the undamaged mattress base functioned when used with his existing mattress.

Gundell's reference to an opinion in which the Appellate Division of the New Jersey Superior Court interpreted the term "nonconforming" in the Uniform Commercial Code, N.J. Stat. Ann. § 12A:2-101 et seq., is inapposite. See Gundell Br. 14–15 (citing All Way Towing, LLC v. Bucks County Int'l, Inc., 178 A.3d 97, 97–99 (N.J. Super. Ct. App. Div. 2018)). In All Way, the court held that a jury could reasonably conclude that a new custom-built tow truck was "nonconforming" when "the towing function was not operational . . . the truck spewed hydraulic fluid . . . metal fell out from beneath the truck, and the wheel lift failed to close properly." 178 A.3d at 98. As an initial matter, the text of the FDR itself, which makes clear that "non-conforming" means "damaged" or "not the exact size, style, color or condition indicated on the sales contract," N.J. Admin. Code § 13:45A-5.1(e)1, obviates the need to refer to judicial constructions of the term "non-conforming" in other statutes or regulations. Even assuming, however, that All Way might illuminate the meaning of the term "non-conforming" as it is used in the FDR, the case is factually inapt. The mattress base that Gundell received was deficient only in the sense that Gundell expected it to fit a mattress and it did not.

In sum, the District Court correctly concluded that the "FDR determines conformity by comparing the good received to that indicated in the sales contract." App.

7 (citing N.J. Admin. Code § 13:45A-5.1(a)(5)).  We therefore decline to disturb the court's entry of summary judgment for Sleepy's with respect to Count III.[3]

The District Court also concluded that a consumer may not state a claim under the TCCWNA unless the consumer is "aggrieved."  The court granted summary judgment for Sleepy's with respect to Counts I and II, both of which assert claims under the TCCWNA, because it determined that Gundell was not "aggrieved."  Gundell concedes that a consumer may seek damages under the TCCWNA only if the consumer is "aggrieved."  But Gundell insists that even a non-aggrieved consumer may seek injunctive or declaratory relief under the TCCWNA.  We are not persuaded.

The New Jersey Supreme Court in Spade v. Select Comfort Corp. held that a consumer who is party to a sales contract with prohibited language, but who suffers no harm as a result of the illegal language, "is not an 'aggrieved consumer' entitled to a remedy under the TCCWNA."  181 A.3d 969, 972 (N.J. 2018) (quoting N.J. Stat. Ann. § 56:12–17).  Gundell offers two reasons why, notwithstanding the holding in Spade, a non-aggrieved consumer may pursue an equitable remedy under the TCCWNA.  He argues, first, that the TCCWNA creates an equitable cause of action for non-aggrieved consumers insofar as it provides that any provision unlawful under the TCCWNA "shall be null and void."  N.J. Stat. Ann. § 56:12-16.  And he argues, second, that that the

---

[3] Gundell also argues that, because "the base was nonconforming," the District Court's "ruling that [Sleepy's] had no obligation to accept [Gundell's] demand for a refund is incorrect as well."  Gundell Br. 18.  But this argument is foreclosed by our conclusion that the mattress base was not "non-conforming" under the FDR, and we need not consider it.

7

TCCWNA creates an equitable cause of action for non-aggrieved consumers insofar as it provides that a "consumer . . . shall have the right to petition the court to terminate a contract which violates the" TCCWNA. N.J. Stat. Ann. § 56:12-17.

Gundell's proposed interpretation of the TCCWNA is irreconcilable with the New Jersey Supreme Court's categorical declaration in Spade that a "plaintiff pursuing a TCCWNA cause of action must prove," inter alia, "that the plaintiff is an 'aggrieved consumer.'" 181 A.3d at 976. The Court's rule applies, on its terms, to every "TCCWNA cause of action," without regard for whether the action is one for damages or for equitable relief. We cannot qualify the Court's rule when the plain language of the rule suggests no such qualification.

Our assessment of Gundell's proposed interpretation of the TCCWNA is also informed by the New Jersey Supreme Court's recent holding in Robey v. SPARC Group LLC that a plaintiff seeking an injunction under the CFA must demonstrate "ascertainable loss," even if the practice the plaintiff seeks to enjoin has been held unlawful. 311 A.3d 463, 477–78 (N.J. 2024). The Court explained that the requirement of ascertainable loss is an important constraint on a private person's entitlement to enforce the CFA as a "private attorney[] general[]." Id. at 478. We decline to draw a distinction between the availability of monetary and equitable remedies under the TCCWNA when the New Jersey Supreme Court has specifically disavowed such a distinction in its interpretation of a closely related statute.

We conclude, in sum, that the District Court correctly determined that Gundell could not seek relief under the TCCWNA without demonstrating that he was an

8

"aggrieved consumer." N.J. Stat. Ann. § 56:12–17. Gundell has not claimed that he is "aggrieved" except insofar as he received a mattress base that he alleges was "non-conforming" under the FDR. But we have already concluded that the mattress base Gundell received was not "non-conforming." It follows that Gundell is not an "aggrieved consumer" entitled to pursue a cause of action under the TCCWNA. We therefore see no basis on which to disturb the District Court's grant of summary judgment in favor of Sleepy's with respect to Counts I and II of the Third Amended Complaint.[4]

## IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of Sleepy's.

---

[4] Because we conclude that the District Court correctly granted summary judgment in favor of Sleepy's, we need not address Gundell's argument that the court erred in declining to certify a class with respect to Count II.