NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5177-17T2

ROBERT CAMERON on
behalf of himself and all
other similarly situated,

      Plaintiff-Appellant,

v.

SOUTH JERSEY PUBS,
INC., d/b/a TGI FRIDAY'S,
INC.,

      Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

July 11, 2019

APPELLATE DIVISION

Argued January 23, 2019 – Decided July 11, 2019

Before Judges Yannotti, Rothstadt and Natali.
(Judge Yannotti dissenting).

On appeal from the Superior Court of New Jersey, Law
Division, Burlington County, Docket No. L-2106-14.

Wesley G. Hanna argued the cause for appellant (Law
Office of Sander D. Friedman, LLC, attorneys; Sander
D. Friedman and Wesley G. Hanna, of counsel and on
the briefs).

Joseph A. Gallo argued the cause for respondent
(McGivney, Kluger & Cook, PC, attorneys; Joseph A.
Gallo and William D. Sanders, of counsel and on the
brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

In this appeal, we are asked to determine whether the Law Division properly denied plaintiff's motion for class certification under Rule 4:32-1(b)(2) where plaintiff's claims were similar to those considered by the New Jersey Supreme Court in Dugan v. TGI Fridays, Inc., 231 N.J. 24 (2017). In Dugan, the Court held that class certification under Rule 4:32-1(b)(3) was not appropriate based on a "price-inflation" theory. 231 N.J. at 34. The Dugan plaintiffs argued that TGI Friday's, Inc. (TGIF), the restaurant chain, violated the Consumer Fraud Act (CFA), N.J.S.A. 56:81-2.2 and 2.5, and the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, by failing to disclose the prices it charged for beverages on its menus. Ibid. They claimed that TGIF was able to charge each member of the class, across the board, $1.72 more than the "fair" or "reasonable" prices that the market would bear if the prices had been disclosed on the menu. Ibid. The Court recognized this as a "price-inflation" theory of damages and held that (b)(3) class certification was not appropriate under the CFA or the TCCWNA because each class member's claim was dependent upon their individual dining

experiences and, under the TCCWNA, the Legislature did not intend for the Act to impose substantial financial penalties for violations.

We conclude that <u>Dugan</u>'s holding did not require the denial of plaintiff's motion for (b)(2) certification in this case because the Court's concerns in <u>Dugan</u> were not relevant to plaintiff's application for (b)(2) certification. To hold otherwise, as suggested by our dissenting colleague, will not only "make it more difficult for a class of . . . defrauded consumers to act collectively in pursuit of a common remedy against a corporate wrongdoer," <u>Dugan</u>, 231 N.J. at 75 (Albin, J., dissenting), but also it will in fact slam the courthouse doors shut on them, rather than "open[ing] the . . . doors for those who cannot enter alone." <u>Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 104 (2007).

We granted plaintiff Robert Cameron individually, and on behalf of all others similarly situated, leave to appeal from the Law Division's order denying his motion for (b)(2) class certification. Plaintiff's complaint alleges that defendant South Jersey Pubs Inc., doing business as TGIF, violated the CFA and the TCCWNA by failing to list beverage prices on its menu. Plaintiff seeks monetary damages for himself as well as injunctive and declaratory relief for all individuals who received a menu and ordered a beverage from a menu without a price in one of defendant's two establishments during a specific time period.

He specifically seeks permanent injunctive relief directing defendant to include beverage prices on its menus and a declaration that the failure to do so is an unlawful commercial practice under the CFA and a violation of the TCCWNA. On appeal, plaintiff argues that the motion judge erred in denying his motion for class certification because he satisfied the requirements for (b)(2) class certification. We agree and reverse the denial of (b)(2) class certification.

I.

We glean the following facts from the motion record. Defendant is a franchisee of TGIF and owns and operates two TGIF restaurants, one in Toms River and the other in Manahawkin. On August 1, 2012, plaintiff went to defendant's restaurant in Toms River.[1] He was given a menu, initially ordered a water, then his meal, and a beer, and then added a soda. He believed that all of this, plus tip, would cost about $20. After finishing his meal, plaintiff was presented with the bill and was shocked to see that he had been billed over "$5[] for a mass produced beer, and . . . close to . . . $3[] . . . for a soda." On his way

---

[1] Plaintiff was originally one of the named class representatives in Dugan but as the Court noted, plaintiff's claims "related to a visit to a franchise-owned-TGIF restaurant," and were dismissed by the trial court when it "exclude[ed] customers who exclusively visited franchise TGIF restaurants," as compared to company TGIF owned establishments. Dugan, 231 N.J. at 39 n.4.

out, plaintiff looked at a menu and noticed that the drink prices were not listed. Plaintiff stated that he never would have ordered the drinks if the prices were listed.

Thereafter, plaintiff filed his complaint.[2] On December 24, 2015, plaintiff filed an initial motion for class certification, but withdrew it on March 21, 2016. On September 13, 2017, he renewed his motion for class certification under Rules 4:32-1(b)(2) or (b)(3). Plaintiff sought a class of "[a]ll customers of . . . [defendant's] restaurants who purchased items from [a] menu that did not have a disclosed price" during the period from August 1, 2006 through the present date.[3] However, on October 5, 2017, a day after the Supreme Court issued its opinion in Dugan, plaintiff withdrew his motion for class certification under (b)(3) for damages and relied solely on class certification under (b)(2) for injunctive relief.

---

[2] We have not been provided with a copy of the original complaint.

[3] The exact definition of the purported class is derived from plaintiff's later-filed amended complaint because we have not been provided with a copy of the original complaint or the certifications filed in support of any of plaintiff's motions.

While his renewed motion was pending, plaintiff filed an amended complaint in November 2017. In the amended complaint, plaintiff alleged that defendant violated the CFA and the TCCWNA based on its failure to list certain beverage prices on its menu. According to plaintiff, defendant's actions were contrary to N.J.S.A. 56:8-2.2 and N.J.S.A. 56:8-2.5.[4] Plaintiff also asserted claims for breach of contract and unjust enrichment. The complaint demanded monetary damages for plaintiff and a "proposed class . . . of all customers of . . . [defendant's] restaurants who purchased items from the menu that did not have a disclosed price[,]" and declaratory and injunctive relief on behalf of himself and the class. Plaintiff specifically sought a declaration that "[d]efendant's practice . . . [was] unlawful" and an injunction to prevent "[d]efendant from continuing to offer beverages for sale without written price disclosures." Defendant filed an answer denying the allegations in the complaint.

---

[4] N.J.S.A. 56:8-2.2 provides that it shall be unlawful for a seller to advertise "merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price." N.J.S.A. 56:8-2.5 provides that it shall be unlawful for anyone "to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale." "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

According to plaintiff, despite the age of the case, no discovery had been completed prior to the class certification motion being considered by the court. However, plaintiff relied upon discovery obtained in <u>Dugan</u> to support his complaint's factual contentions. Citing to that discovery, plaintiff alleged that TGIF intentionally developed a plan to not disclose beverage prices on its restaurants' menus as a form of "menu engineering," after it conducted various market studies that concluded by not disclosing prices, it could charge higher prices to its patrons.[5] Relying upon a deposition taken in <u>Dugan</u> from one of

---

[5] In <u>Dugan</u>, Justice Albin stated in his dissent that TGIF's conduct violated the CFA. In his analysis, he described the results of TGIF's market analysis and their application as follows:

> TGIF determined the "fair" price and "think-twice" price for the purchase of meals with and without alcoholic beverages. The "think-twice" price, apparently, is the price at which bells go off in patrons' heads and purchases decline because consumers do not want to exceed their "check thresholds." From TGIF's perspective, the beauty of not placing beverage prices on menus in violation of the CFA is that uninformed patrons do not know when their purchases have exceeded the "fair" price and reached the "think-twice" price.
>
> TGIF learned through the study what is commonly known—that an informed consumer will make rational pricing decisions. Because restaurants "with alcohol pricing on the menu experienced a [$]1.72 [per-person

defendant's officers in this case, plaintiff alleged that defendant followed TGIF's procedure from 2008 through 2016 and he argued that defendant stopped doing so only to avoid being held liable in this litigation.

On April 27, 2018, the motion judge heard argument and afterward denied plaintiff's (b)(2) class certification motion, placing his reasons on the record that day. Initially, the judge opined that the CFA "violations here [were] not clearly established[,] which would warrant . . . injunctive relief," but that was "not dispositive." He also observed that the CFA was not "all about" a litigant being able to pursue "comprehensive injunctive proceedings brought on behalf of thousands . . . of individuals who are now being told they don't have to worry about whether they've been damaged . . . ." He also found that the purported class was "a large group of people. . . . [that was] hard to determine . . . ." According to the judge, injunctive relief was not necessary because it was

_____

average] decline as guests traded down," TGIF made the corporate decision that "alcohol pricing will not be placed on the menu." In other words, TGIF determined that it did not pay to conform to the law and that it was more profitable to capitalize on the ignorance of its patrons. From TGIF's own statistical analysis comes the calculation of ascertainable loss to its patrons and the gain to itself.

[Dugan, 231 N.J. at 78-79 (alterations in original).]

"future oriented" and there was no "showing that any individual or members of the class would . . . suffer future . . . grievances. . . . [as] the whole purpose of an injunction is to avoid damages."

Addressing the purported class, the judge found that it consisted of "thousands of . . . [people] who were just simply identified if [they] showed up [at defendant's establishment,]" so the class was "generalized." He then turned back to the CFA and stated that in determining class certification under (b)(2), "you don't have to worry about predominance," as required by (b)(3), but found that "cohesiveness require[d] th[e] [c]ourt to search through the record . . . [and] the potential claims to determine whether . . . the interests of the individuals are so disparate and so lack[ing] of cohesion that it would make it inappropriate for a class action."

Applying that standard, the judge concluded that there was no evidence of cohesiveness, especially here "where one consumer can go off and get . . . injunct[ive relief] without having some kind of proof of ascertainable loss as it applies to the remainder of the group." The judge distinguished this case from Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 188 (App. Div. 2006), in which we held, in part, that only a putative class plaintiff needs to demonstrate ascertainable loss under the CFA to maintain a (b)(2) class action for purported

violations of the CFA. The judge stated that although the putative class plaintiff in <u>Laufer</u> was only required to demonstrate ascertainable loss, "ascertainable loss [was] evident in the remainder of the group."

Relying on the Court's opinion in <u>Dugan</u>, the judge concluded that "if damage claims can't be subject to class action, then . . . injunctive [relief] can't be subject to class action because injunctive [relief] is secondary to the damage claims in the consumer protection world unless you're the Attorney General. Then you don't have to prove damages."

The judge entered an order denying class certification on April 30, 2018. We granted plaintiff leave to appeal and later issued a stay pending appeal.

II.

On appeal, plaintiff contends that the motion judge erred and abused his discretion in not certifying the class based upon the judge's consideration of whether plaintiff is entitled to the relief demanded in his complaint, "the ultimate merits of the case," and the judge's perception that injunctive relief was not necessary because defendant alleged it voluntarily agreed to disclose beverage prices on its menus going forward. Moreover, plaintiff asserts that the judge incorrectly believed that in order to certify the class, plaintiff was bound to come forward with evidence that all putative class members sustained an ascertainable

10

loss under the CFA. Finally, plaintiff argues that the motion judge "conflate[ed] cohesion and predominance."

Defendant contends that the motion judge correctly denied class certification. The thrust of defendant's response is that proposed class members may have decided to purchase beverages from defendant on any given date for reasons totally unrelated to "the lack of menu pricing." According to defendant, "even if one assumes that patrons viewed the same menus, there is simply no way of knowing which individuals ordered beverages without knowing the prices in advance, and what information about prices they had even in the absence of menu pricing." Although not argued before the motion judge, it further argues to us that the individual nature of "[e]ach proposed class member's dining experience lacked the typicality and commonality necessary for class certification under [Rule] 4:32-1(a) due to the unlimited variations in customers' interactions with servers regrading beverage purchases." Citing to Dugan, defendant contends that the Court found that "there were too many individual variants among how individual patrons ordered beverages to find that 'common questions of law or fact' were 'predominant.'" In addition, defendant avers that in any event, plaintiff was not entitled to injunctive relief once he abandoned his claim for monetary damages.

11

We review a trial court's order granting or denying class certification for an abuse of discretion. Dugan, 231 N.J. at 50. In determining whether the trial court has abused its discretion, we "'must ascertain whether the trial court has followed' the class action standard set forth in Rule 4:32-1." Ibid. (quoting Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 506 (2010)). "Our role in this case is to review the trial courts' class certification decisions, not to act as a factfinder with respect to plaintiffs' substantive claims." Id. at 55 n.8.

Applying that standard, we conclude that the motion judge mistakenly exercised his discretion by not correctly applying the requirements for (b)(2) certification of a class. The judge improperly held that an individual could not pursue injunctive relief under the CFA and determined cohesiveness by focusing upon the possible disparity between class members' dining experiences rather than whether the entire class could be afforded a remedy through a single injunction that would insure defendant's continued compliance with the law, if warranted. In our view, the facts of this case give rise to exactly the type of claims that (b)(2) class certification was intended to address.

A.

We begin our review by observing that certifying a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the

individual named parties only.'" Iliadis, 191 N.J. at 103 (quoting Califano v. Yamasaki, 422 U.S. 682, 700-01 (1979)). "[T]he class action is a device that allows 'an otherwise vulnerable class' or diverse individuals with small claims access to the courthouse," Lee, 203 N.J. at 518 (quoting Iliadis, 191 N.J. at 120), and thus, it "'should be liberally construed.'" Dugan, 231 N.J. at 46-47 (quoting Lee, 203 N.J. at 518).

"[I]n the context of consumer transactions, 'class actions should be liberally allowed . . . under circumstances that would make individual actions uneconomical to pursue.'" Daniels v. Hollister Co., 440 N.J. Super. 359, 363 (App. Div. 2015) (quoting Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J. Super. 31, 45 (App. Div. 2000)). "In short, as the Court made clear in Iliadis, 'a class action "should lie unless it is clearly infeasible."'" Ibid. (quoting Iliadis, 191 N.J. at 103).

Our courts have described "the class-action device's '"historic mission"' [as] caring for '"the smaller guy."'" Id. at 364 (quoting Iliadis, 191 N.J. at 104). A class action serves "numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of

litigation costs among numerous, similarly-situated litigants." Id. at 363 (quoting Iliadis, 191 N.J. at 104).

Significantly, it levels the "playing field" by "'equaliz[ing] the claimants' ability to zealously advocate their positions. That equalization principle "remedies the incentive problem facing litigants who seek only a small recovery." [T]he class action's equalization function opens the courthouse doors for those who cannot enter alone.'" Id. at 363-64 (second alteration in original) (quoting Iliadis, 191 N.J. at 104). "The class-action device was created not only to allow compensation for such small wrongs but also to deter future wrongdoing in the marketplace." Id. at 371-72.

Rule 4:32-2(a) requires that a "court shall, at any early practicable time, determine by order whether to certify the action as a class action." A plaintiff bears the burden of establishing class status. Iliadis, 191 N.J. at 106. "[C]lass certification should not be denied based on the merits of a complaint, [but] some preliminary analysis is required. Carroll v. Cellco P'ship, 313 N.J. Super. 488, 495 (App. Div. 1998).

When considering a motion by plaintiff for class certification, a court is required" to examine "'the claims, defenses, relevant facts, and applicable substantive law.'" Dugan, 231 N.J. at 49-50 (quoting Iliadis, 191 N.J. at 107).

14

It "must 'accept as true all of the allegations in the complaint,' and consider the remaining pleadings, discovery . . ., and any other pertinent evidence in a light favorable to [the] plaintiff." Lee, 203 N.J. at 505 (first quoting Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 376 (2007); then citing Iliadis, 191 N.J. at 96).

The court "must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Dugan, 231 N.J. at 49 (citing Iliadis, 191 N.J. at 106-07). "Although class certification does not occasion an examination of the dispute's merits, a cursory review of the pleadings is nonetheless insufficient." Iliadis, 191 N.J. at 107 (citations omitted). In other words, a court considering a request for class certification must pierce the pleadings. Ibid. Nevertheless, at this stage, a court must "liberally indulge the allegations of the complaint [and] 'liberally construe[]' Rule 4:32-1 in favor of class certification" to achieve the goal that "a class action 'should lie unless it is clearly infeasible.'" Daniels, 440 N.J. Super. at 363-64 (second alteration in original) (quoting Iliadis, 191 N.J. at 103).

1.

To certify a class action, the putative class plaintiff must first establish the requirements in Rule 4:32-1(a). This Rule states:

(1) the class is so numerous that joiner of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[R. 4:32-1(a).]

These requirements are commonly referred to as "numerosity, commonality, typicality and adequacy of representation." Dugan, 231 N.J. at 47 (quoting Lee, 203 N.J. at 519). Once the named plaintiff has established the requirements in Rule 4:32-1(a)(1), he or she must also satisfy either Rule 4:32-1(b)(1),[6] (2), or (3).

Although defendant here argues to us that plaintiff failed to satisfy the requirements of Rule 4:32-1(a)(1), plaintiff's alleged failure to do so was not argued before the motion judge and for that reason, the judge never addressed the contention. Because the issue was not addressed in the motion, we have no reason to consider it now. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Even if we did, we find no merit to defendant's contention as plaintiff's purported class met all of the requirements under Rule 4:32-1(a).

---

[6] It is undisputed that (b)(1) is not the subject of the motion judge's ruling or relevant to this appeal.

A-5177-17T2

Here, it is obvious that the putative class meets the Rule's requirements. The members of the class are far too numerous for individual joinder.

> The common issue of law among all class members is that [defendant] does not list its beverage prices in violation of N.J.S.A. 56:8-2.5. The common issue of fact is that all members of the class suffer from [defendant's alleged] unlawful practice of not listing beverage prices. The loss suffered by patrons resulting from [the alleged] violation of the CFA is dispersed over the entire class of beverage purchasers, with individual patrons incurring greater or lesser losses.
>
> [Dugan, 231 N.J. at 82 (Albin, J. dissenting).]

The class members' claims "'arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members . . . .'" Laufer, 385 N.J. Super. at 180-81 (citation omitted). The unlawful conduct alleged here is a violation of the CFA and the TCCWNA arising from the failure to list beverage prices on menus given to plaintiff and the putative class members. Finally, plaintiff can adequately represent the class even if his "interests" are not "identical" to all class members, as he does "'not have interests antagonistic to those of the class.'" Id. at 182 (quoting Delgozzo v. Kenny, 266 N.J. Super. 169, 188 (App. Div. 1993)).

2.

The dispute here focused on only whether plaintiff, seeking only injunctive relief, was entitled to (b)(2) class certification, which is different than the (b)(3) certification considered by the Court in Dugan, where the claim was for damages and civil penalties.  "Though classes certified under . . . (b)(3) and . . . (b)(2) all proceed as 'class actions,' the two subsections actually create two remarkably different litigation devices."  Shelton v. Bledsoe, 775 F.3d 554, 560 (3d Cir. 2015).[7]

Under (b)(3),

> [i]f th[e] initial requirements [of Rule 4:32-1(a)] are satisfied, the court then considers whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
>
> [Pisack v. B & C Towing, Inc., 455 N.J. Super. 225, 250 (App. Div.), leave to app'l granted, 235 N.J. 477 (2018) and 236 N.J. 24 (2018) (quoting R. 4:32-1(b)(3)).]

---

[7] "Where there is no New Jersey case law relevant to a class certification issue, 'our courts have consistently looked to the interpretations give the federal counterpart for guidance.'"  Laufer, 385 N.J. Super. at 183 (quoting Delgozzo, 266 N.J. Super. at 188).

"Predominance exists if 'the proposed class is "sufficiently cohesive to warrant adjudication by representation."'" Ibid. (quoting Dugan, 231 N.J. at 48). "To establish predominance, . . . a 'plaintiff does not have to show that there is an "absence of individual issues or that the common issues dispose of the entire dispute," or "that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner."'" Ibid. (alterations in original) (quoting Lee, 203 N.J. at 520).

Proof of predominance under (b)(3) is not a requirement for (b)(2) certification. Gates v. Rohm & Haas Co., 655 F.3d 255, 263-64 (3d Cir. 2011).[8]

---

[8] To the extent that our dissenting colleague relies upon Gates's holding that the denial of (b)(2) class certification in that case supports the same result here, we conclude such reliance is inapposite. Gates involved a class-based medical monitoring claim under Pennsylvania law arising out of allegations that a company dumped toxic wastewater that seeped into an aquifer and evaporated, polluting the air with the toxic carcinogen, vinyl chloride. The Third Circuit considered the elements of a Pennsylvania medical monitoring claim and concluded that "[p]laintiffs . . . failed to propose a method of proving the proper point where exposure to vinyl chloride presents a significant risk of developing a serious latent disease for each class member. . . . [or that] the proposed monitoring regime [was] reasonably medically necessary." Gates, 655 F.3d at 268. As a result, the plaintiffs could not "prove the medical necessity of [their] proposed monitoring regime without further individual proceedings to consider class members' individual characteristics and medical histories and to weigh the benefits and safety of a monitoring program." Id. at 269. For that reason, the court found that "[p]laintiffs c[ould not] show the cohesiveness required for certification of a Rule 23(b)(2) class." Ibid. No such issues exist in the present CFA/TCCWNA matter.

Under (b)(2), class certification is warranted if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." R. 4:32-1(b)(2). Certification under (b)(2) is appropriate where one injunction can remedy the harmful conduct. See MacNeil v. Klein, 141 N.J. Super. 395, 412-13 (App. Div. 1976) (observing that (b)(2) class certification would be inappropriate to remedy adverse but disparate jail conditions in different counties). Whether (b)(2) certification is appropriate therefore "turns on the precise nature of the remedy sought." Goasdone v. Am. Cyanamid Corp., 354 N.J. Super. 519, 532 (Law Div. 2002). See also Shelton, 775 F. 3d at 561.

Section (b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011).

"[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none

of them.'" Shelton, 775 F. 3d at 561 (quoting Wal-Mart, 564 U.S. at 360). The issue at the point of deciding class certification is not whether plaintiff has proven his or the class members' entitlement to injunctive relief, see Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 10 (App. Div. 1992) (stating that non-exclusive factors, if established, would warrant a permanent injunction), but rather whether the relief, if warranted, would provide a remedy for the entire class.

The mere fact that a defendant has allegedly voluntarily desisted from the challenged conduct is not a reason for denying an injunction or therefore (b)(2) certification. A "tardy attempt of defendant to lend an appearance of observance of plaintiff's rights will avail it nothing. An injunction may issue 'to prevent an anticipated or threatened injury, either to protect against a repetition of unlawful conduct or to guard against reasonably apprehended misconduct or infringement of legal right.'" Sheahan v. Upper Greenwood Lake Prop. Owners Ass'n., 36 N.J. Super. 133, 136 (App. Div. 1955) (quoting Hoffmann-LaRoche, Inc., v. Weissbard, 11 N.J. 541, 551 (1953)).

A party who invokes (b)(2) for class certification must be seeking declaratory or injunctive relief and the defendant must have acted or refused to act on grounds generally applicable to the class. This latter requirement is

generally referred to as the need for cohesiveness. Amchem. Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "Because there is no right to opt out from such a class, and because significant individual issues in a[ ](b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism, . . . such classes must be cohesive." Shelton, 775 F. 3d at 561.

"In the context of a (b)(2) application, cohesiveness is considered 'a natural consequence' of the second requirement." Goasdone, 354 N.J. Super. at 531 (citing Santiago v. City of Philadelphia, 72 F.R.D. 619, 627 (E.D. Pa. 1976)). "Cohesiveness requires a certain 'homogeneity' of the claims of the class members. . . . [which] has been described as the 'essence' of a (b)(2) class action." Id. at 533 (citations omitted). In other words, there must be a "strong commonality of interests." Gates, 655 F.3d at 264.

Nevertheless, "a class action may be maintained under . . . (b)(2) even though defendant's conduct is not damaging to every member of the class. What is important is that the relief sought by the named plaintiffs should benefit the entire class." Laufer, 385 N.J. Super. at 183 (citations and internal quotation marks omitted). "Injuries remedied through (b)(2) actions are really grouped,

as opposed to individual injuries."  <u>Shelton</u>, 775 F. 3d at 561 (quoting <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 143 n.18 (3d Cir. 1998)).  Therefore,

> [i]n order to determine if the class meets the requirement of cohesiveness under (b)(2), the court must analyze the legal and factual issues involved in the specific case, and determine if the claims of class members can more sensibly be adjudicated as a group or if the case would essentially break down into litigation of individual claims due to the presence of significant individual issues.
>
> [<u>Goasdone</u>, 354 N.J. Super. at 536.]

For example, in <u>Laufer</u>, the plaintiff filed a class action against an insurance company for violations of the CFA.  385 N.J. Super. at 176.  The plaintiff alleged the insurance company violated the CFA by sending notices to its insureds stating they had nursing home coverage, when in fact, they did not.  <u>Id.</u> at 176-78.  Plaintiff sought monetary damages on behalf of herself, and injunctive and declaratory relief on behalf of a class of individuals who were also sent the notices.  <u>Id.</u> at 178.  The plaintiff sought "an injunction compelling defendants to send written notice to all class members, notifying them in plain and prominent language that they do <u>not</u>, and have not had, nursing home coverage, and notifying them that the [c]ourt has declared" the representations violated the CFA.  <u>Ibid.</u>

23

We affirmed the Law Division's decision to certify the class under (b)(2). Id. at 184. In doing so, we observed that the notices "were sent to all policyholders" and "the limited injunctive relief sought . . . would clearly 'benefit the entire class.'" Id. at 183-84 (quoting Baby Neal v. Casey, 43 F.3d 48, 59 (3d Cir. 1994)). Therefore, we implicitly found that plaintiff's claims were cohesive because everyone was at least sent the notice. See id. at 184.

Although certain individuals may not have opened or relied upon the notice, the "limited injunctive relief sought," namely a notice indicating that the insured did not have nursing home benefits, would affect the class in the same way. In deciding Laufer, we held that injunctive relief for the class was proper even though there was no realistic possibility that the named plaintiff was at risk of any future injury from the defendant's wrongful conduct. Id. at 188.

B.

With these guiding principles in mind, we examine the "'claims, defenses, relevant facts, and applicable substantive law,'" Dugan, at 231 N.J. at 49-50 (quoting Iliadis, 191 N.J. at 107), relating to plaintiff's CFA and TCCWNA claims for which (b)(2) certification was sought. Our examination is not focused on whether plaintiff will succeed, but on whether the claims are amenable to class certification. See Iliadis, 191 N.J. at 120-21; Beegal v. Park West Gallery,

24

394 N.J. Super. 98, 110-11 (App. Div. 2007); <u>Delgozzo</u>, 266 N.J. Super. at 180-81.

1.

Turning first to his CFA claim, plaintiff alleges that defendant "knowingly and/or intentionally fail[ed] to disclose the prices of [various] . . . beverages [it] offer[s] for sale[,]" thereby engaging in a knowing omission in violation of N.J.S.A. 56:8-2.2's prohibition against "bait and switch" advertising, and N.J.S.A. 56:8-2.5's requirement for "merchandise . . . [to be] price marked at the point of purchase." As stated previously, plaintiff seeks injunctive relief for the class compelling disclosure of beverage prices and declaratory relief confirming that the failure to do so is an unlawful commercial practice under the CFA.

"The CFA was enacted to 'provide[] relief to consumers from "fraudulent practices in the market place."'" <u>Dugan</u>, 231 N.J. at 50 (alteration in original) (quoting <u>Lee</u>, 203 N.J. at 521). It "has been hailed as 'one of the strongest consumer protection laws in the nation[.]'" <u>Weinberg v. Sprint Corp.</u>, 173 N.J. 233, 257 (2002) (Verniero, J., dissenting) (alteration in original) (quoting <u>Governor's Press Release for Assembly Bill</u>, No. 2402, at 1 (June 29, 1971)).

"Courts have emphasized that like most remedial legislation, the [CFA] should be construed liberally in favor of consumers." <u>Belmont Condo. Ass'n,</u>

25

Inc. v. Geibel, 432 N.J. Super. 52, 75 (App. Div. 2013) (alteration in original) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994)). We must be "mindful that the Act's provision authorizing consumers to bring their own private action is integral to fulfilling the legislative purposes . . . ." Cox, 138 N.J. at 16.

The CFA prohibits "unlawful practices" which "can be divided, for analytical purposes, into three categories." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556 (2009) (citing Cox, 138 N.J. at 17). Unlawful practices can be "affirmative acts, claims asserting knowing omissions, and claims based on regulatory violations." Ibid. (citing Cox, 138 N.J. at 17); see also Dugan, 231 N.J. at 51 ("[a]n 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation").

Where a plaintiff's theory is based on a knowing omission, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 138 N.J. at 18 (citing Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522 (1991) (Stein, J., concurring)). However, where, as alleged by plaintiff here, the claim is based on a regulatory violation, a plaintiff need not demonstrate intent "because 'the regulations impose strict liability for

such violations.'" Bosland, 197 N.J. at 556 (first quoting Cox, 138 N.J. at 18; then citing Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977)).

> The Legislature not only included affirmative acts and knowing omissions in the category of consumer fraud violations, but also "impose[d] strict liability" for regulatory violations, regardless of the defendant's intent. It did so because "parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the [CFA]."
>
> [Spade v. Select Comfort Corp., 232 N.J. 504, 518 (2018) (alterations in original) (quoting Cox, 138 N.J. at 18-19).]

As originally enacted, only the Attorney General could enforce the CFA's provisions. Dugan, 231 N.J. at 50. However, the Legislature subsequently amended the CFA to permit private suits. Id. at 50-51. "It [now] affords a consumer legal relief, equitable relief, treble damages, and counsel fees." Pisack, 455 N.J. Super. at 240 (citing N.J.S.A. 56:8-19). The amendment "provide[s] easier access to the courts for the consumer, . . . increase[s] the attractiveness of consumer actions to attorneys[,] and . . . reduce[s] the burdens on the Division of Consumer Affairs." Weinberg, 173 N.J. at 248-49 (alterations in original) (quoting Governor's Press Release for Assembly Bill, No. 2402, at 2 (Apr. 19, 1971)).

In addition to demonstrating that a defendant engaged in an unlawful practice, a private plaintiff asserting a claim under the CFA must also allege that he or she suffered an ascertainable loss, and "a causal relationship between the unlawful conduct and the ascertainable loss." Dugan, 231 N.J. at 52 (quoting D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013)). "An 'ascertainable loss' is one that is 'quantifiable or measurable' and not 'hypothetical or illusory.'" Pisack, 455 N.J. Super. at 240 (quoiting Lee, 203 N.J. at 522).

"The [CFA] creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable loss." Weinberg, 173 N.J. at 249. "[A] consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." Pisack, 455 N.J. Super. at 240-41 (quoting Lee, 203 N.J. at 522). If the plaintiff can demonstrate that he or she has suffered an ascertainable loss, "a private action may seek to remedy a [CFA] violation not only as it affects the named plaintiff but also other consumers." Laufer, 385 N.J. Super. at 185.

However, a private plaintiff need not succeed at trial in establishing an ascertainable loss to be entitled to injunctive relief. "Requiring a plaintiff ultimately to prove an ascertainable loss in order to obtain injunctive relief is too difficult a standard and would deter, rather than encourage, private causes

of action, in contravention of the legislative scheme."  Weinberg, 173 N.J. at 251.  The plaintiff's claim of ascertainable loss only needs to survive a motion for summary judgment in order to pursue a claim for injunctive relief under the CFA.  Id. at 253.

"Claims under the CFA . . . may be appropriate for class certification. . . . One consumer may not think it worthwhile to pursue such a claim, but if there are hundreds of such aggrieved consumers, a class may be appropriate."  Pisack, 455 N.J. Super. at 250-51.  "[T]he class action rule should be construed liberally in a case involving allegations of consumer fraud."  Laufer, 385 N.J. Super. at 185 (quoting In re Cadillac, 93 N.J. 412, 435 (1983)).  "A consumer fraud class may be certified even where individual questions, such as the degree of damages due a particular class member or reliance by individual class members on a defendant's alleged misrepresentations, remain following resolution of the common issues."  Beegal, 394 N.J. Super. at 111-12.

In a (b)(2) class action, only the lead plaintiff, not the class, needs to make a sufficient showing of ascertainable loss because "[a] class representative is not generally in a position to present evidence that unnamed class members suffered ascertainable loss as a result of an alleged consumer fraud."  Laufer, 385 N.J. Super. at 187.  Such a requirement could hamper "the maintenance of class

actions." Ibid. "Therefore, only the named plaintiff . . . is required to satisfy the threshold standing requirement of 'a claim of ascertainable loss that can survive a motion for summary judgment.'" Id. at 186 (quoting Weinberg, 173 N.J. at 253).

Contrary to our dissenting colleague's view, Weinberg did not require that a named plaintiff in a (b)(2) class action establish at the class certification stage, or any subsequent stage, that any of the individual class members suffered an ascertainable loss. See post at 52. Rather, "Weinberg ma[de] clear" that a named plaintiff could obtain injunctive relief on his own behalf and behalf of a putative class if he could survive a motion for summary judgment, after class certification.

In Weinberg, the Court considered whether the named plaintiff could pursue a claim for injunctive relief under the CFA, but unlike the present case, did so after the trial court certified the class, after discovery, and after summary judgment was granted against the named plaintiff, without any consideration of the individual class members' claims. 173 N.J. at 237-40. The Court concluded that the individually named plaintiff could not proceed with the class action claim for injunctive relief because he, not the individual class members, was not able to "demonstrate that his claim of personal ascertainable loss posed a

30

genuine issue of material fact that required submission to a jury . . . ." Id. at 240 (emphasis added).

The Court held that if the plaintiff could have successfully opposed summary judgment, he could have pursued a claim for injunctive relief even if he did not ultimately prove ascertainable loss. It stated:

> [A] plaintiff with a bona fide claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act.
>
> [Id. at 253.]

The Court did not say that the plaintiff would be barred from pursing that claim on behalf of the class if he did not establish on summary judgment each class members' claim of ascertainable loss. As we observed in Laufer, a reading of Weinberg to require that showing, especially at the class certification stage, would interfere with the benefits of pursuing a CFA class action, which are "encouraged" to "vindicat[e] . . . rights protected by the [CFA] . . . ." 385 N.J. Super. at 187.

For that reason, we have looked to a named plaintiff's claims rather than those of the individual class members. See, e.g., Hoffman v. Hampshire Labs,

31

Inc., 405 N.J. Super. 105, 114 (App. Div. 2009) (affirming a CFA class action's dismissal under Rule 4:6-2 where the named plaintiff's "complaint . . . fail[ed] to set forth sufficient facts that, if proven, would establish that plaintiff suffered an 'ascertainable loss' (emphasis added)). Notably, consistent with Weinberg, in Laufer, plaintiff did not even allege that the class members suffered an ascertainable loss, only that she did, and after considering the plaintiff's claim we determined (b)(2) certification was warranted. 385 N.J. Super. at 178-79.

Applying these guiding principles to the motion judge's decision, it is evident that he conflated various concepts regarding plaintiff's CFA claim. First, he questioned plaintiff's ability to maintain a CFA action for injunctive relief as compared to the Attorney General's. As discussed, that concern had no legal basis because plaintiff pled a viable claim that he suffered such a loss. Second, the judge misconstrued the requirement for cohesiveness to include a requirement that plaintiff had to prove that the class members could all establish damages or an ascertainable loss. This consideration too has no place in determining (b)(2) class certification. Id. at 188. Likewise, the judge's consideration of plaintiff's ultimate success on the merits of his class claim for a permanent injunction was not appropriate. Delgozzo, 266 N.J. Super. at 180-81.

Also, contrary to the motion judge's conclusion, <u>Dugan</u> does not bar plaintiff's CFA claims for injunctive relief. In <u>Dugan</u>, the Court also addressed claims for injunctive relief made in the companion case that it decided, <u>Bozzi v. OSI Restaurant Partners LLC</u>, (A-93-15). The class in <u>Dugan</u> was much broader than in the present case. "[T]he class defined by the trial court consisted of '[a]ll persons who visited a [TGIF] restaurant in New Jersey that is owned by [TGIF] (i.e., company owned store) from January 12, 2004 to July 14, 2014, and purchased an offered but unpriced soda, beer or mixed drink.'" <u>Dugan</u>, 231 N.J. at 39 (second, third, and fourth alterations in original). The <u>Bozzi</u> class was more similar to plaintiff's class in this action. In <u>Bozzi</u>, "[t]he court defined the class to include "[a]ll persons who: (a) visited any [of the two franchisees'] restaurant[s] in New Jersey, from [December 23, 2004] to the present date; and (b) <u>purchased an item offered on the menu or table placards for which no price was disclosed on the menu or table placard</u>." <u>Id.</u> at 42-43 (emphasis added).

Addressing Dugan's claims, the Court held that under (b)(3), the plaintiff failed to "establish[] the predominance with respect to their CFA claims," "[b]ecause our CFA class action jurisprudence rejects 'price-inflation' theories" "for a class numbering in the millions, [where plaintiff claimed] that TGIF charged each member of the class $1.72 more than the 'fair' or 'reasonable' prices

A-5177-17T2

that it would have charged had it disclosed its beverage prices on the menu." Id. at 34.

As the Court stated, it "reach[ed] a different conclusion" in Bozzi. Id. at 35. It explained that for the (b)(3) predominance requirement to be met, a more limited class was required. It stated the following:

> Although Bozzi asserts general claims that the defendant's restaurants failed to disclose prices, his allegations focus primarily on a specific pricing practice. He alleges that the defendant's restaurants violated the CFA by increasing the price charged to a customer for the same brand, type, and volume of beverage in the course of the customer's visit to the restaurant, without notifying the customer of the change. Bozzi's counsel represents that this price-shifting claim is supported by claimant-specific receipts showing that each customer making this claim was charged different prices for the same brand, type, and volume of beverage in the course of a single visit to one of the defendant's restaurants.
>
> We hold that if the Bozzi class is redefined to include only customers who make that specific CFA claim, and the claim is limited accordingly, plaintiff Bozzi has met the requirements of Rule 4:32-1 and may attempt to prove that claim on behalf of the class.
>
> [Ibid.]

The Court directed that "[o]n remand, the trial court should certify the class solely for the purpose of pursuing CFA claims based upon the defendant restaurants' alleged practice of charging a customer different prices for

34

beverages of the same brand, type, and volume during the same restaurant visit."
Id. at 67. Although the Court also vacated the injunctive relief that the trial court granted in Bozzi compelling the defendant to list beverage prices, it did so only because the injunction applied to too broad of a class and because "Bozzi offered no argument in support of the trial court's injunctive relief." Ibid. n.14. However, it specifically preserved Bozzi's claim for injunctive relief under the CFA, directing the trial court to consider the application anew after the "certification of the more limited class." Ibid. The fact that Bozzi did not satisfy the (b)(3) predominance requirement did not therefore persuade the Court that injunctive relief could not be granted.

We also disagree with the motion judge's view of "cohesiveness" under (b)(2). We conclude that the appropriate consideration is whether a single injunction would provide relief to all members of the purported class. Here, regardless of what happened at defendant's restaurants that led to patrons who received menus ordering beverages, if plaintiff is correct, the law required that they all be advised on the menu of the pricing for all items being offered for sale. A (b)(2) class seeking injunctive relief directing the inclusion of menu pricing does not require a class member to be able to opt in or out of the class and the relief, if granted, would apply to all patrons who visited the

35

establishments. It is the remedy's ability to satisfy all similar claims that is a proper consideration in determining (b)(2) cohesiveness, not the commonality of the patron's dining experiences at the two restaurants. The mere fact that some members of the class who had a different dining experience after receiving menus are swept up into the class does not cause them or defendant any harm or additional burden. All members will benefit if plaintiff proves the CFA has been violated, and defendant will have no obligation to all class members other than posting prices, if required.

Significantly, the cost of complying with injunctive relief if granted is far less in plaintiff's case than in Laufer where the defendant was directed to print and mail notices to each class member. Here, the Dugan Court's concern about the cost of dealing with millions of claims does not exist. Defendant's menus need only be updated to reflect prices and there is no need to pay the costs of identifying and notifying individual class members.

We conclude that plaintiff's CFA claim was appropriate for class certification and raised the precise type of claim that, if proven, was amenable to a single injunction that would afford relief to the entire class, as contemplated by (b)(2). For that reason, we reverse the motion judge's determination as to plaintiff's CFA claim.

2.

We reach a similar conclusion regarding plaintiff's other (b)(2) claim that defendant violated the TCCWNA, which "is intended 'to prevent deceptive practices in consumer contracts.'" Spade, 232 N.J. at 515 (quoting Dugan, 231 N.J. at 67). "Its purpose 'is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts.'" Pisack, 455 N.J. Super. at 241 (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 457 (2011)). It "authorizes the award of a civil penalty, damages, attorneys' fees, and costs to an 'aggrieved consumer[.]'" Spade, 232 N.J. at 516 (quoting N.J.S.A. 56:12-17).

Under the TCCWNA, a plaintiff must establish:

> first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer."
>
> [Ibid. (alterations in original) (quoting N.J.S.A. 56:12-15, -17).]

See also Dugan, 231 N.J. at 69; Pisack, 455 N.J. Super. at 241.

Under the TCCWNA, there must be a "written consumer contract[,] . . . notice[,] or sign" and the statute "does not apply when a defendant fails to provide the consumer with a required writing." Dugan, 231 N.J. at 70-71 (alterations in original) (emphasis added) (first quoting N.J.S.A. 56:12-15; then citing Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 540-41 (App. Div. 2008)). However, when a consumer contract contains language "prohibited by [a regulation, that] . . . alone [may] constitute a violation of a 'clearly established legal right of a consumer or responsibility of a seller' under N.J.S.A. 56:12-15, and thus may provide a basis for relief under the TCCWNA." Spade, 232 N.J. at 520.

Indulging plaintiff's contentions here with a liberal construction, a menu is at least an offer to contract. Moreover, while the TCCWNA speaks to inclusion of a prohibited clause or provision, it clearly applies where the offer to contract intentionally omits information that is at least in this case, alleged to be require under the law.

To be an aggrieved consumer under the TCCWNA, a consumer must "ha[ve] suffered some form of harm as a result of the defendant's conduct." Id.

at 522.  The harm is not "limited to injury compensable by monetary damages."

Id. at 523.

> Proof of harm resulting from contract language
> prohibited by N.J.S.A. 56:12-15 may warrant a civil
> penalty under N.J.S.A. 56:12-17, even if the harm is not
> compensable by damages.
>
> In the absence of evidence that the consumer suffered
> adverse consequences as a result of the defendant's
> regulatory violation, a consumer is not an "aggrieved
> consumer" for purposes of the TCCWNA.
>
> [Id. at 524.]

In Dugan, the Court did "not determine whether a defendant restaurant's presentation of a menu that omits beverage prices gives rise to a TCCWNA claim."  231 N.J. at 70-71.  Rather, it determined that the Dugan and Bozzi plaintiffs could not satisfy the predominance requirement for (b)(3) certification.  Id. at 71.  It found that the plaintiffs could not be "aggrieved consumers" without proof that they each actually received menus from defendant because "the TCCWNA addresses 'contract[s],' 'warrant[ies],' 'notice[s],' and 'sign[s]' and does not apply when a defendant fails to provide the consumer with a required writing."  Id. at 71 (alterations in original) (quoting N.J.S.A. 56:12-15).  For that reason,

> [e]ven if [the Court] accept[ed] plaintiff's theory of
> liability under the TCCWNA, . . . . a claimant who does

> not, at a minimum, prove that he or she received a menu cannot satisfy the elements of TCCWNA and is not an "aggrieved consumer." In that critical regard, individual questions would predominate over common issues at trial.
>
> [Id. at 72-73 (emphasis added).]

The Court also rejected plaintiff's claim under the TCCWNA because there was no evidence, as required by the Act, that the failure to post beverage prices on a menu violated a "clearly established legal right." Id. at 73. It observed that there were no published opinions or actions taken by the Attorney General that established the failure to list beverage prices on a menu violated N.J.S.A. 56:8-2.5 as alleged by the plaintiffs. Ibid.

Finally, the Court concluded that the Legislature did not intend that the TCCWNA's civil penalties should be imposed as the plaintiffs suggested. It stated that "[n]othing in the legislative history of the TCCWNA, which focuses on sellers' inclusion of legally invalid or unenforceable provisions in consumer contracts, suggests that when the Legislature enacted the statute, it intended to impose billion-dollar penalties on restaurants that serve unpriced food and beverages to customers." Id. at 74.

The concerns raised in Dugan regarding the TCCWNA claims do not come in to play in plaintiff's case here. First, as noted, the Court did not address the

TCCWNA claim for (b)(2) certification, which does not require a focus on each purported class member's individual dining experience. By definition, as plaintiff identified the class, plaintiff and each member of the class received a menu and ordered a beverage.

Second, the granting of (b)(2) class certification here does not raise concerns about the Legislature's intention to not impose extreme financial hardship for TCCWNA violations. The focus is rather on whether a single injunction and declaratory relief, if either is warranted, can provide a remedy to the entire class or none of them in order to compel the inclusion of beverage prices on menus, if their omission gives rise to a violation of law. Moreover, if required, the cost of altering menus for the two restaurants is minimal compared to the costs of the penalties addressed by the Dugan Court.

Third, although we agree that the Dugan Court correctly observed that there is no case law or Attorney General opinions declaring the failure to include beverage prices on a menu to be a violation of the TCCWNA or any other law, we note that there is no legal authority that holds to the contrary—that the omission is in fact lawful. Finally, plaintiff's class is narrowly drawn to include only those who ordered off menus without beverage prices. Whether one or all members of the class did so is of no moment if defendant was required to include

the price in order to not violate the law. If a court were to find that the failure to disclose prices on a menu given to plaintiff and the class members was a violation of the TCCWNA because a required provision to a consumer contract was not included, we cannot envision any circumstances where declaratory and injunctive relief would not be valid remedies to consider, if necessary, to secure future compliance with the law. To hold otherwise, would allow a merchant to intentionally violate the law without being subjected to any action brought under (b)(2) or (b)(3) seeking to enforce the CFA and the TCCWNA.

Reversed and remanded for entry of an order vacating the denial of class certification and ordering (b)(2) class certification. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5177-17T2

_____

**YANNOTTI, P.J.A.D., dissenting.**

The majority concludes that the trial court mistakenly exercised its discretion by denying plaintiff's motion for class certification pursuant to Rule 4:32-1(b)(2). Because I believe the majority erroneously concludes plaintiff satisfied the rule's requirements for class certification, and because the decision is inconsistent with the reasoning in Dugan v. TGI Fridays, Inc., 231 N.J. 24 (2017), I respectfully dissent.

I.

In Dugan, the Court addressed consolidated appeals in Dugan v. TGI Fridays, Inc. and Bozzi v. OSI Restaurant Partners, LLC. Id. at 34. In the Dugan case, the plaintiff alleged that "during visits to a company-owned TGIF restaurant," she purchased soft drinks, mixed drinks, and beer off the menus. Id. at 36. The plaintiff alleged that she was not informed of the prices of the beverages until the restaurant's staff presented her with a check. Id. at 36-37. She further claimed that she was charged $2 for a beer at the bar, but later charged $3.59 for the same beer after moving to a table. Id. at 37.

The plaintiff claimed the defendants violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -206, by engaging in unconscionable commercial practices contrary to N.J.S.A. 56:8-2. Id. at 36. She also claimed the defendants

violated N.J.S.A. 56:8-2.5 by selling, or attempting to sell, "merchandise that is not price marked at the point of purchase." Ibid. In addition, the plaintiff claimed the defendants violated the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, by offering beverages "without notifying the consumer of the total selling price at the point of purchase." Ibid. The plaintiff later amended her complaint and added an additional plaintiff and class representative. Id. at 38-39.

The plaintiffs in Dugan sought class certification pursuant to Rule 4:32-1(b)(3). See id. at 37. The trial court granted the motion. Id. at 39. The trial court defined the class to consist of "[a]ll persons who visited a [TGI Fridays] restaurant in New Jersey that is owned by [the defendants] from January 12, 2004 to July 14, 2014, and purchased an offered but unpriced soda, beer or mixed drink." Ibid. (first alteration in original).

On appeal, we reversed the trial court's order, finding that the plaintiffs had not met the requirement of Rule 4:32-1(b)(3) that the "common issues of fact as to . . . TGIF's customers who purchased unpriced soda, beer or mixed drinks predominate over issues that pertain to individual class members." Id. at 40 (alteration in original) (quoting Dugan v. TGI Fridays, Inc., 445 N.J. Super. 59, 79 (App. Div. 2016)).

The Supreme Court affirmed our judgment. Id. at 34. The Court noted that the plaintiffs in Dugan indicated that they intended to establish their claims under the CFA based on "a fraud on the market or price inflation theory," premised on the assertion that the defendant's unlawful pricing practices allowed it to overcharge customers. Id. at 58. The Court held, however, that the plaintiffs could not establish "ascertainable loss and causation" on their CFA claims "by demonstrating that [the defendants'] beverage prices were higher than they would have been had [the defendants] listed [their] prices on [the] restaurant menus." Id. at 60.

The Court stated:

> A "fair" or "reasonable" price derived from the per-visit expenditures of marketing research subjects is no substitute for proof of the actual claimants' ascertainable loss and causation. Plaintiffs' price-inflation theory does not globally establish those elements of the CFA for the vast and varied class of restaurant customers for which the Dugan plaintiffs seek certification.
>
> [Ibid.]

The Court noted that the Dugan plaintiffs were not prepared to present individual proof that every claimant in their proposed class would have purchased fewer or less expensive drinks, or none at all, if the defendants had disclosed the beverage prices. Id. at 55.

3

The Court therefore determined that with respect to the CFA claims, the plaintiffs in <u>Dugan</u> had not satisfied the predominance requirement of <u>Rule</u> 4:32-1(b)(3). <u>Id.</u> at 63. The Court reached a similar conclusion regarding the TCCWNA claims, noting that to establish those claims, a claimant had to show that he or she was an "aggrieved consumer," and the plaintiffs' claims "g[ave] rise to a range of individual questions" with regard to the interactions between the customers and the servers. <u>Id.</u> at 71.

## II.

Here, defendant is a franchisee of TGI Fridays, Inc. and operates two TGIF restaurants in New Jersey. Plaintiff alleges that on August 1, 2012, he went to one of defendant's restaurants. He claims a server provided him with a menu and he thereafter ordered a beer and soda. Plaintiff thought his bill and the tip would cost about $20, and claims he was "shocked" when charged "$5[]" for a mass produced beer" and almost $3 for a soda. Plaintiff alleges that when he left the restaurant, he looked at a menu and noticed it did not list the prices for drinks. He claims he would not have ordered the beverages, or would have ordered less expensive beverages, if the prices had been listed on the menu.

In this case plaintiff asserts essentially the same claims that the plaintiffs asserted in <u>Dugan</u>. He alleges that defendant violated the CFA by engaging in

4

an unconscionable business practice in violation of N.J.S.A. 56:8-2, based on defendant's failure to disclose the prices of beverages on the menu prior to sale. He alleges defendant also violated the CFA by engaging in a form of "bait and switch" in violation of N.J.S.A. 56:8-2.2 because the price of the beverages purchased were not disclosed until the "merchandise" had been consumed. Plaintiff also claims defendant violated the TCCWNA because consumers allegedly "have a clearly established legal right to have the total selling price plainly marked or located at the point" of sale. In addition, plaintiff asserted claims for breach of contract and unjust enrichment.

Plaintiff sought monetary damages for himself; designation of a class of persons, which includes all of defendant's patrons who purchased items from menus that did not disclose prices; and declaratory and injunctive relief for himself and the members of the class. Plaintiff later filed a motion to certify a class pursuant to Rule 4:32-1(b)(2). In the amended complaint, plaintiff defined the class as "all customers of New Jersey South Jersey Pubs restaurants who purchased items from the menu that did not have a disclosed price."

It appears that plaintiff's application for class certification was based on the CFA and TCCWNA claims. It also appears that plaintiff has abandoned his claims for monetary relief on behalf of the class, and he only sought class

certification under <u>Rule</u> 4:32-1(b)(2) for the purpose of seeking injunctive and declaratory relief on the CFA and TCCWNA claims.

As the majority notes, the trial court denied plaintiff's motion. <u>Ante</u> at __ (slip op. at 2). The trial court determined that plaintiff had not satisfied the requirement of <u>Rule</u> 4:32-1(b)(2) that the claims of the class be cohesive. The court noted that under the CFA, the plaintiff could not seek injunctive relief on behalf of a class of persons without showing that the members of the class each sustained some ascertainable loss. We thereafter granted plaintiff's motion for leave to appeal.

### III.

To obtain class certification, a putative class representative first must establish the requirements of <u>Rule</u> 4:32-1(a), by showing that

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, <u>Rule</u> 4:32-1(b) provides that if the requirements of subsection (a) are satisfied, a class action may be maintained if

(1) the prosecution of separate actions by or against individual members of the class would create a risk of either of:

(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . .

Our class action rules were modeled after those in the Federal Rules of Civil Procedure. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007). In the absence of relevant New Jersey case law interpreting the class-action rules, we look to the federal courts' interpretation of the federal class action rules for

guidance. <u>Laufer v. U.S. Life Ins. Co.</u>, 385 N.J. Super. 172, 183 (App. Div. 2006).

Here, the majority correctly concludes that to obtain class-action certification under <u>Rule</u> 4:32-1(b)(2), the putative class representative must show that the claims of the class are "cohesive." <u>Ante</u> at __ (slip op. at 21-23). Our Supreme Court has not addressed this question, but several federal courts have determined that the criteria for certification of a class under federal rule 23(b)(2) requires a showing that the class and its claims are cohesive.

In <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 143 (3d Cir. 1998), the Court of Appeals noted that it was "well-established" that for purposes of certification under <u>Rule</u> 23(b)(2) of the Federal Rules of Civil Procedure, "class claims must be cohesive." The court also commented, that "a (b)(2) class may require more cohesiveness than a (b)(3) class . . . because in a (b)(2) action, unnamed members are bound by the action and without the opportunity to opt out." <u>Ibid.</u>

Indeed, "cohesiveness is the touchtone of a (b)(2) class" because "the relief sought must perforce affect the entire class at once." <u>Ebert v. Gen. Mills, Inc.</u>, 823 F.3d 472, 480-81 (8th Cir. 2016) (quoting <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 361-62 (2011)). The need for cohesiveness requires "an

inquiry into the relationship between the class, its injuries, and the relief sought" because of the requirement that final injunctive relief be appropriate for the class as a whole.  Shook v. Bd. of Cty. Comm'rs of El Paso, 543 F.3d 597, 604 (10th Cir. 2008).

The absence of such cohesiveness "can preclude certification."  Ibid. (citing Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 524 (5th Cir. 2007); In re St. Jude Med., Inc., 425 F.3d 1116, 1121 (8th Cir. 2005); Barnes, 161 F.3d at 143).  Furthermore, "'disparate factual circumstances of class members' may prevent a class from being cohesive . . . ."  Gates v. Rohm & Haas Co., 655 F.3d 255, 264 (3d Cir. 2011) (quoting Carter v. Butz, 479 F.2d 1084, 1089 (3d Cir. 1973)).

A. Claims Under the CFA

The majority concludes plaintiff satisfied the cohesiveness requirement in Rule 4:32-1(b)(2) with regard to the claims under the CFA.  Ante at __ (slip op. at 31).  The majority states that the trial court erred by concluding that plaintiff could not seek class-based injunctive relief for the alleged CFA violations.  Ibid. The majority also states that the trial court "misconstrued the requirement for cohesiveness to include a requirement that plaintiff had to prove that the class members could all establish damages or an ascertainable loss."  Ibid.

It should be noted that in this case, plaintiff sought certification of a class that includes all persons who purchased a beverage at defendant's restaurants from menus that did not include beverage prices. The majority finds class certification is appropriate under (b)(2) because defendant allegedly acted or failed to act "on grounds generally applicable to the class" by failing to provide patrons with menus that include beverage prices. Ante at __ (slip op. at 34-35).

In my view, the claims and the relief sought are not appropriate for certification under Rule 4:32-1(b)(2) because although defendant allegedly provided the putative class members with menus that did not have beverage pricing, the class members may have chosen to purchase beverages for reasons that had nothing to do with the lack of beverage prices on the menu. Indeed, plaintiff alleges he purchased beverages, notwithstanding the absence of that information, apparently with the expectation that he would be charged a price less than he was actually charged.

Other patrons may have been return customers, who knew the prices that defendant would charge for beverages. In addition, other patrons may have had no concern as to the amounts defendant would charge for drinks. Thus, there is a lack cohesiveness among the putative class members as to whether they were, in fact, harmed by the lack of beverage pricing on the menus.

10

I believe the majority also errs by determining that private litigants can obtain class-based injunctive relief under Rule 4:32-1(b)(2) for the alleged violations of the CFA. The majority concludes that if the class representative shows an ascertainable loss to support the CFA claims, injunctive relief may issue as to the entire class without proof that members of the class sustained any ascertainable losses. Ante at __ (slip op. at 31, 34).

As initially enacted, the CFA did not include any private right of action. Dugan, 231 N.J. at 50. The CFA only authorized the Attorney General to seek relief to address consumer fraud. Ibid. (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 14 (1994)). The CFA was later amended to permit consumers to bring private actions to recover refunds and damages. Id. at 50-51 (citing Weinberg v. Sprint Corp., 173 N.J. 233, 248 (2002); Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 226 (1972)).

When pursuing claims under the CFA, the Attorney General is not required to show a consumer was damaged by the alleged unlawful conduct; however, "a private plaintiff must show that he or she suffered an 'ascertainable loss.'" Id. at 52 (quoting Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473 (1988)); see also Weinberg, 173 N.J. at 251 (stating that the CFA "unmistakably makes a claim of ascertainable loss a prerequisite for a private

cause of action"); Lee, 203 N.J. at 522 (holding that to establish causation under the CFA, a private litigant must prove that he or she "suffered an ascertainable loss").

In Weinberg, the Court emphasized that there is a fundamental difference between actions brought by the Attorney General and private actions permitted by the CFA. Weinberg, 173 N.J. at 250. The Court stated that, "In effect, the [CFA] permits only the Attorney General to bring actions for purely injunctive relief." Ibid. The Court held that the CFA "allows a private cause of action to proceed for all available remedies, including an injunction, whenever a consumer can plead a claim of ascertainable loss that can survive a motion for summary judgment." Id. at 253. Therefore, if the plaintiff does not succeed on the damage claim at trial, the plaintiff could be awarded injunctive relief and attorney's fees if he or she proves an unlawful practice in violation of the CFA. Ibid.

Here, the majority erroneously concludes that plaintiff can assert claims for injunctive relief on behalf of the class for the alleged CFA violations without any proof that the members of the class sustained an ascertainable loss as a result of the alleged unlawful acts or omissions. Weinberg makes clear that a claim of ascertainable loss is an essential element of a private cause of action under the

12

CFA, and generally private litigants may not bring actions under the CFA seeking only injunctive relief.  Weinberg, 173 N.J. at 250.

Weinberg holds that a private plaintiff can be awarded injunctive relief under the CFA on an individual basis, but only if the plaintiff presents a bona fide claim of ascertainable loss that would survive a motion for summary judgment.  Id. at 253.  Here, plaintiff has not presented such claims on behalf of the putative class members.  In the absence of a bona fide claim of ascertainable loss on the part of the class members, the CFA does not permit the issuance of injunctive relief.

Moreover, it cannot be assumed that each member of the putative class sustained a bona fide ascertainable loss due to the absence of menu beverage pricing.  As explained in Dugan, each class member may have decided to purchase the beverage for reasons that may have had nothing to do with the menus' lack of beverage pricing.  Thus, some members of the proposed class may not have sustained an ascertainable loss caused by the alleged violation of the CFA.  Therefore, the claims asserted under the CFA on behalf of the class lack the cohesion required for certification under Rule 4:32-1(b)(2).

In its opinion, the majority relies upon Laufer for the conclusion that the putative class members in this case may obtain injunctive relief on their CFA

13

claims. Ante at __ (slip op. at 28-29). In my view, the majority's reliance upon Laufer is misplaced.

In that case, the plaintiff subscribed to a group insurance policy issued by the defendant, through an organization in which plaintiff was a member. Laufer, 385 N.J. Super. at 176-77. The administrator of the policy issued a notice to policyholders stating that the policy had increased coverage, which included "nursing home benefits," and the plaintiff paid premiums for the additional coverage. Id. at 177-78. The plaintiff later learned that the policy did not, in fact, include nursing home benefits. Ibid.

The plaintiff filed an action against the insurer and the administrator, claiming that the communications regarding the "'nursing home' benefit[s]" violated the CFA, and that she sustained an "ascertainable loss" due to the deceptive communications. Ibid. The plaintiff brought the action on her own behalf and on behalf of a class consisting of all persons in the United States who had been insured under a group policy underwritten by the defendant insurer and managed by the administrator. Ibid.

Thereafter, the plaintiff filed a motion for class certification under Rule 4:32-1(b)(2). Ibid. The trial court limited the class to New Jersey residents. Id. at 179. The trial court found that class certification was appropriate because the

defendant insurer was alleged to have acted on grounds generally applicable to the class members, and that the alleged CFA violations would affect every potential class member in a similar manner. Ibid.

On appeal, the insurer argued that the complaint did not meet the requirements for certification under Rule 4:32-1(b)(2) because the plaintiff did not allege that the class members, other than the plaintiff herself, sustained an ascertainable loss. Ibid. The court held, however, that class certification was appropriate under Rule 4:32-1(b)(2) because the notices sent to all policyholders "were potentially damaging to every member of the putative class, even though some class members may not have read the notices or relied upon the purported nursing home benefits in determining whether to maintain the coverage provided by the policy." Id. at 183-84.

The court stated that the plaintiff was only seeking limited injunctive relief, specifically, notice to other class members that the policy did not include nursing home coverage. Id. at 84. The court determined that if the administrator's notices to the policyholders were found to have violated the CFA, it may be appropriate to grant final injunctive relief to all members of the class. Ibid.

In Laufer, the court also addressed the insurer's claims that the lawsuit could not be maintained as a class action because the plaintiff did not allege the other class members suffered an ascertainable loss as a result of the alleged consumer fraud. Id. at 184-85. The court stated that under Weinberg, the plaintiff must present a claim of an ascertainable loss in order to establish standing to sue, but once that threshold requirement is satisfied, the plaintiff can pursue all other available remedies, including injunctive relief. Id. at 186 (citing Weinberg, 173 N.J. at 253). The court held that in a class action, only the putative class representative is required to establish standing. Ibid. (citing Lewis v. Casey, 518 U.S. 343, 395 (1996) (Souter, J., concurring in part, dissenting in part)).

In my view, Weinberg does not support the conclusions reached in Laufer. In Weinberg, the Court held that an individual private party who presents a CFA claim with a bona fide claim of ascertainable loss could obtain injunctive relief and attorney's fees even if the damage claim ultimately fails at trial. See Weinberg, 173 N.J. at 253. The Weinberg Court did not address the question of whether a (b)(2) class action could be maintained under the CFA on behalf of a putative class without establishing that each member of the class suffered bona fide ascertainable loss.

16

Furthermore, to the extent that Laufer suggests that a (b)(2) class action can be maintained on that basis, the decision is inconsistent with the Court's statement in Weinberg that "the plain language of the [CFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action[.]" See id. at 251; see also Dugan, 231 N.J. at 52; Lee, 203 N.J. at 522. The court in Laufer stated that only the putative class representative must establish "standing," but standing for purposes of establishing a private cause of action under the CFA requires proof of an unlawful act or omission, as well as a bona fide claim of ascertainable loss.

Here, the majority concludes that under Laufer, the plaintiff in this case need only establish a bona fide claim of an ascertainable loss to obtain class certification under Rule 4:32-1(b)(2). In my view, however, Weinberg supports the conclusion that the class representative also must establish bona fide claims of ascertainable loss on behalf the class members because without such proof, the CFA does not permit the issuance of injunctive relief on their behalf. Moreover, an initial showing of a bona fide ascertainable loss on the part of each class member is necessary to establish that the claims of the class members are cohesive. Because the class as defined by plaintiff includes persons that may or may not have sustained an ascertainable loss, based on their own particular

experiences, the CFA claims asserted on behalf of the class are not sufficiently cohesive for class certification under Rule 4:32-1(b)(2).

The majority also finds support for its decision in the Supreme Court's decision on the claims asserted in Bozzi v. OSI Restaurant Partners, LLC, the companion case decided with Dugan. Dugan, 231 N.J. at 34-35. In Bozzi, the plaintiff asserted claims under the CFA and TCCWNA based on allegations that customers who ordered more than one beverage on a visit to an OSI restaurant were charged a higher price for the second or subsequent beverage of the same brand, type or volume, without informing the customer of the change. Id. at 64-67.

The Court found that if the proposed class were limited to the price-shifting claims, certification of a class is permissible under Rule 4:32-1(b)(3). Id. at 65. The Court determined that Bozzi's CFA claim satisfied the predominance requirement under the rule. Ibid. The Court stated:

> With the assistance of claimant-specific records, both parties will be in a position to determine the dates and locations of the visits at issue and may be able to identify the reasons for the inconsistent prices. Even if discovery proves that the price disparity alleged by the class derived not from a single corporate policy but from restaurant-specific happy hour or other pricing practices, the trial court may be in a position to evaluate the disputed practices on a restaurant-by-restaurant basis. If plaintiffs prove an unlawful practice under the

> CFA, the receipts, in combination with other evidence, may support a finding of ascertainable loss and causation. The trial court would clearly be confronted with the task of adjudicating individual questions, but the existence of individual questions does not preclude a finding of predominance.
>
> [Id. at 65-66 (citing Lee, 203 N.J. at 526-28; In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 430-35 (1983)).]

The Court's disposition of the Bozzi claims does not, however, support the majority's decision in this case. The claims in Bozzi were limited to alleged unlawful price-shifting as applied to a number of patrons, rather than the generalized lack of menu pricing that forms the basis of the CFA claims in this case. See id. at 65. Moreover, the Court emphasized that if the plaintiff in Bozzi proved that the price-shifting practice is unlawful, there is sufficient evidence to support a finding of ascertainable loss and causation. See id. at 65-66. Such evidence is absent here.

Therefore, I would conclude that plaintiff may not maintain a class action under Rule 4:32-1(b)(2) for injunctive under the CFA without establishing a bona fide claims of an ascertainable loss on behalf of the putative class members. I also would conclude that to the extent any members of the putative class allegedly sustained such losses, the CFA claims would lack the cohesiveness required for certification of the class under Rule 4:32-1(b)(2).

19

B. Claims Under the TCCWNA

The majority also concludes that the trial court erred by denying class certification for the claims under TCCWNA. The majority correctly notes that in Dugan, the Court found that the TCCWA claims should not be certified as a class action under Rule 4:32-1(b)(3), and in Dugan, the Court did not address whether the TCCWNA claims were appropriate for class certification under (b)(2). Ante at __ (slip op. at 37).

However, the Court's reasoning in Dugan is instructive. The Court noted that, "To determine predominance under Rule 4:32-1(b)(3), the court decides 'whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."'" Dugan, 231 N.J. at 48 (quoting Iliadis, 191 N.J. at 108). Thus, the Court's decision that the plaintiff in Dugan failed to establish predominance for purposes of class certification under (b)(3) should inform our decision in this case.

In Dugan, the Court noted that under the TCCWNA, a seller may not, during the course of its business, offer any consumer to enter into a written contract if the contract "includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller[.]" Dugan, 231 N.J. at 68 (quoting N.J.S.A. 56:12-15). Therefore, to prevail on a claim under

the TCCWNA, the plaintiff must be an "aggrieved consumer," and the defendant must have violated a "clearly established legal right" or "responsibility." Id. at 69 (quoting N.J.S.A. 56:12-15 and -17).

The Court held that the plaintiffs had not met the predominance requirement of Rule 4:32-1(b)(3) with regard to the TCCWNA claims. Id. at 71. The Court stated:

> First, the requirement that a plaintiff be an "aggrieved consumer" in order to pursue a TCCWNA claim gives rise to a range of individual questions regarding the interaction between the customer and the server in this case. By its terms, the TCCWNA addresses "contract[s]," "warrant[ies]," "notice[s]," and "sign[s]" and does not apply when a defendant fails to provide a consumer with a required writing. Here, the writing on which plaintiffs rely is the restaurant menu. Plaintiffs concede that, at a minimum, a claimant must prove that he or she was presented with a menu during his or her visit to the defendant's restaurant in order to establish the defendants' liability under the TCCWNA. That critical inquiry cannot be resolved by customer receipts or other documents. Even if we accept plaintiff's theory of liability under the TCCWNA, the testimony of the individual claimant or another witness would be necessary to prove that the plaintiff satisfied the statute's requirements and is thus an "aggrieved consumer."
>
> [Id. at 71-72 (alterations in original) (citations omitted).]

The TCCWNA claims asserted in this case are essentially the same as those asserted in <u>Dugan</u> and <u>Bozzi</u>. In my view, the Court's reasoning in <u>Dugan</u> applies with equal force to the question of whether the plaintiff in this case satisfied the cohesiveness requirement under <u>Rule</u> 4:32-1(b)(2) for the TCCWNA claims.

In its opinion, the majority asserts that the "concerns" of the <u>Dugan</u> Court regarding the TCCWNA claims do not apply here. <u>Ante</u> at __ (slip op. at 39). The majority correctly noted that in <u>Dugan</u>, the Court did not address class certification under <u>Rule</u> 4:32-1(b)(2). However, the Court's decision that the TCCWNA claims did not meet the predominance requirement under <u>Rule</u> 4:32-1(b)(3) should inform our decision on whether the claims are cohesive.

Further, the Court in <u>Dugan</u> stated that to prevail on a TCCWNA claim, the plaintiff has to establish that he or she is an "aggrieved consumer." <u>Dugan</u>, 231 N.J. at 71. The Court stated that at a minimum, a claimant would have to establish that he or she received a menu that did not have beverage pricing, and in that regard, "individual questions would predominate over common issues at trial." <u>Id.</u> at 72-73. Here, the majority states that those concerns are not present because the class only includes persons who received a menu and ordered a beverage. <u>Ante</u> at __ (slip op. at 39).

But, as the Court stated in <u>Dugan</u>, whether a patron was an "aggrieved consumer" depends as well on the patron's interaction with a server. <u>Dugan</u>, 231 N.J. at 71. It also may depend on whether the patron previously had been at the restaurant, purchased a beverage, and knew what the price would be. Thus, TCCWNA claims asserted on behalf of the putative class are not cohesive.

The majority also states that the Court's concern in <u>Dugan</u> with the potential TCCWNA liability is not present in this case because plaintiff is not seeking monetary relief, which under TCCWNA could be $100 per violation. <u>See id.</u> at 74. The majority states that the cost of altering the menus at the two restaurants would be minimal when compared to the potential liability in <u>Dugan</u>. <u>Ante</u> at __ (slip op. at 39).

That may be so, but the absence of any potential liability does not address the key issue in this case, which is whether the claims of the putative class under TCCWNA are sufficiently cohesive for purposes of <u>Rule</u> 4:32-1(b)(2). In my view, they are not. Therefore, I would conclude that the trial court correctly decided to deny certification of the class under <u>Rule</u> 4:32-1(b)(2) for the TCCWNA claims.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5177-17T2